## 31364. WEST v. THE STATE.

GARDNER, J. 1. The defendant was tried on an indictment for murder, and convicted of voluntary manslaughter. He filed his amended motion for a new trial, which was overruled, and assigns error on this judgment. This is the second trial under the indictment. On the first trial the defendant was convicted of murder. On April 21, 1946, the Supreme Court reversed that judgment (200 *Ga.* 566). The evidence is quite lengthy and conflicting. As to the general grounds, neither counsel for the State nor counsel for the defendant are at variance as to any point of law involved, except the defendant on one hand claims that the evidence is insufficient to sustain the verdict and the State takes the contrary view. We must assume that the court charged fully every principle of law applicable to the evidence. This is true, since there is no assignment of error on the charge or any portion thereof. Indeed, the charge is not made a part of the record. There is some evidence that would sustain a verdict of manslaughter either on the theory of homicide under a passion, or a homicide under the principle of mutual combat. We see nothing to be gained by detailing the evidence. The general grounds are not meritorious.

2. Special ground 1 assigns error on the admission of evidence over the objection of the defendant. This was testimony by the widow of the deceased. It was in rebuttal of the defendant's statement. The defendant in his statement had related a conversation that he had with the deceased on the morning of the homicide, which occurred in the afternoon. In effect, the defendant stated that when the deceased arrived at the home of the defendant, who lived with the defendant's brother, the defendant asked the deceased why he was so dressed up and where the defendant was going, whereupon the deceased remarked that he drank something that morning, had a fuss with his family, and left home. The widow was allowed to testify that the deceased did not have any fuss with his family and was not drinking to an extent that any person who did not know the deceased well could tell it. If we may concede that this testimony was inadmissible under the whole record of this case, we can not see that it was prejudicial to the defendant. Admittedly, the deceased and the defendant and others engaged in a drinking spree and brawl during the day and until the death of the deceased. Under the record, this portion of ground 1 presents no cause for reversal.

In this same ground error is assigned because the widow was permitted to testify that the deceased owned no knife. This testimony was offered by the State in rebuttal of the defendant's statement that when he shot the deceased, the deceased was advancing on him with his hands in his pocket, stating that he would cut the defendant's throat, and in rebuttal also of testimony for the defendant that the deceased was shot standing near a well, and that several months thereafter the well was cleaned out and mud taken therefrom which contained a knife. Under the record of this case we think that the testimony of the witness related a fact which the jury might well consider along with all the other evidence. We find no cause for reversal for any reason assigned in this ground.

424

3. Special ground 2 assigns error on the admission over the objection of the defendant of testimony offered by the sheriff, who visited the scene of the homicide shortly after the killing. The sheriff made certain measurements at the scene as well as certain tests of shooting with the gun which the defendant used in killing the deceased. During the course of the sheriff's testimony, the following question was propounded to him: "Did you get a measurement from the corner of the house here, from the right-hand corner if you were facing the house, did you get a distance from there to where Mr. Hendrix's [the deceased's] body was lying?" The witness answered, "I measured from the corner of this house." The defendant interposed the following objections: "Now, if the court pleases, before he goes any further, I am objecting to that question and the answer as being an arbitrary distance. There is no evidence in this case at all that Mark West was ever at the locality embodied in the question he is asking. Any other distance might have been taken just as well, and to ask this witness if [he] measured from where the man was to a corner of the house is certainly not a proper question to be asked or answered. It doesn't illustrate any issue in the case, and besides it is prejudicial and hurtful to the rights of the defendant to a fair and impartial trial, in that he is undertaking to involve the corner of the house, give the jury inference that the man might have been standing behind the house and shooting at a different place than the evidence in this case shows so far." The solicitor-general then stated to the court: "I think in view of the testimony of the sheriff, if your honor pleases, what the distance would have had to have been in his judgment at the time Mr. Hendrix shot, we've got a right to compare that with the distance that he finds, whatever it is, that's what I'm asking, from the corner of this house to the wall, certainly it is admissible."

One of the main issues of fact was the distance between where the defendant was standing when he shot the deceased, and where the deceased was standing when he received his mortal wound. This issue also involved the contentions of the defendant in his statement as well as evidence in his behalf as to the exact position and conduct of the defendant and the deceased relative to each other at the time the mortal shot was fired. Under the record, this assignment of error is not meritorious. The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

DECIDED OCTOBER 21, 1946.

*Deal & Anderson, W. G. Neville,* for plaintiff in error.
*Fred T. Lanier, Solicitor-General,* contra.