36224. WHITLEY CONSTRUCTION COMPANY *v.* O'DELL.

DECIDED SEPTEMBER 20, 1956—REHEARING DENIED OCTOBER 5, 1956.

*Carter, Latimer & Savell, Zachary & Hunter,* for plaintiff in error.

*M. Cook Barwick, Wilson, Branch & Barwick, Gambrell, Harland, Russell, Moye & Richardson,* contra.

GARDNER, P. J. 1. As to the general grounds, it is contended by the plaintiff that the evidence produced at the trial is insufficient to support the verdict rendered by the jury. This proposition is based on the contention of the plaintiff that the evidence of the defendant is entirely circumstantial and cannot prevail over positive and uncontradicted evidence in the case and on behalf of the plaintiff. It is contended on the part of the defendant that this principle of law cannot prevail on behalf of the plaintiff in the instant case because the jury were authorized to find that the witnesses furnishing the evidence on behalf of the plaintiff were contradicted, confused and impeached. As to the general grounds, the decisions of this court will determine the issue before us. It is the law of this State that the burden of proof is on the plaintiff to make out its case by a preponderance of evidence. It is also true that when a counter-claim is filed, as in the instant case, the burden of proving the allegations of the counter-claim rests with the defendant. These principles of law are so elementary that we think they need no citation of authorities to support them. Approaching the case from this viewpoint it becomes necessary for us to call attention to some essential parts of the evidence bearing on the question before us.

Patrolman Smith testified that he found the car between a mailbox, which was on the north shoulder of the road, and Azalea Circle; that the back end of the car was down in the ditch which ditch was approximately five feet from the edge of the pavement and that had the accident happened where the two eyewitnesses said it did the car would not have wound up in the ditch between the mailbox and Azalea Circle without knocking the mailbox down. This witness further testified that he and his partner made a police report of the accident which was filed with the city authorities and that it was an inaccurate statement and that he had made no effort to amend that statement to make it speak the truth because it would be a reflection on the police department. He stated that he expected to correct it if called upon to do so in a proceeding in which it was involved. He stated

that the collision could not have occurred where the operator of the truck said it did. In talking to the operator of the truck, James Edwards told this policeman that he didn't know why the operator of the car ran into his truck unless she was blinded. While we do not here impugn the testimony of a police officer, that was a matter for the jury, but we do say that the jury was authorized to find that the operator of the truck was impeached if the jury saw fit to so hold. In reading this whole evidence it is material to consider that. It is very material in this case to determine where the collision occurred. A witness for the defendant, Mr. George L. Lallerstedt, testified that his regular business was to pick up wrecked cars; that he went to the scene of this collision to pick up this particular car. He found the back of the car in the ditch, the same place where the patrolman testified he found it; that when he jacked up the car the type of debris which occurs when a car is in a collision fell from the car. The patrolman had likewise testified as to the location of this debris. Again referring to the testimony of James Edwards that immediately after the collision the automobile was down beyond the mail box, he stated that it was in between the mailbox and Azalea Circle as was testified to by a number of witnesses. Edwards further testified that it was below the mailbox and in between the mailbox and Azalea Circle. This witness finally testified that he didn't recall where it was. This same witness, James Edwards, further testified that he didn't tell the policeman that the operator of the car was blinded by the lights. The policeman positively testified that he asked Edwards how the accident happened and that Edwards stated that he didn't know, she probably got blinded, he didn't know what happened. This same witness, James Edwards, swore in support of his version of the collision that there was a car driving in front of him on North Druid Hills Road and that the car turned left on North Druid Hills Road into Azalea Circle immediately after one of the investigating officers, Patrolman Smith, testified positively and unequivocally that the driver of the truck told him that a car came out of Azalea Circle and proceeded along North Druid Hills Road immediately ahead of him. The witness Edwards further testified that at the time of the accident he was not in his road gear and that his road gear was his fifth gear. At this stage

there was read to Edwards his deposition taken before the trial in which he testified three times that he was in fifth gear or the road gear at the time of the collision. Edwards further testified that he couldn't put his lights on bright, that they were wired up straight for dim. He was asked if he had any bright lights on the truck. He answered no. Edwards was then read his pre-trial deposition in which he was asked again if he had on the bright lights. He stated that he had on dim lights. When questioned as to how the witness knew concerning the lights he stated that he was positive because he never changed them after he pulled out from behind this car. In the deposition Edwards was asked again as to when he dimmed the lights. He stated when he came out of Clairmont behind this car he had them on. He testified "there wasn't no cars, and I put them on bright then, and that was when I was leaving the job. . . I switched them on dim, and never did change them." In explanation of the inconsistency in his sworn testimony on two different occasions he stated: "If I said that you must have had me tied up; and I didn't know what I was speaking about." We recognize the soundness of the principle of law that where a party relies solely on circumstantial evidence to establish his cause, such circumstantial evidence must yield as a matter of law to direct, positive and unimpeached testimony as to material matters to the contrary.

We have given somewhat in detail the direct testimony of the plaintiff rendered by the agent who was in charge of the truck on the occasion in question and have likewise given the testimony of various witnesses taken from the record to the effect that the jury were authorized to find that the witnesses of the plaintiff were unworthy of belief. This was solely a jury question. See *Frazier* v. *Georgia R. & Bkg. Co.*, 108 *Ga.* 807 (1) (33 S. E. 996), wherein it was held: "When a plaintiff's right to recover depended upon the establishment of a particular fact, and the only proof offered for this purpose was circumstantial evidence from which the existence of such fact might be inferred, but which did not demand a finding to that effect, a recovery by the plaintiff was not lawful, when, by the positive and uncontradicted testimony of unimpeached witnesses, which was perfectly consistent with the circumstantial evidence relied on by the plaintiff, it was affirmatively shown that no such fact existed." See in this connection

*Georgia, Southern &c. Ry. Co.* v. *Thompson,* 111 *Ga.* 731 (36 S. E. 945), and *Myers* v. *Phillips,* 197 *Ga.* 536 (29 S. E. 2d 700). To the same effect see *Emory University* v. *Bliss,* 35 *Ga. App.* 752 (134 S. E. 637), *Slaton* v. *Atlanta Gas Light Co.,* 62 *Ga. App.* 42 (7 S. E. 2d 769), and *Travelers Insurance Co.* v. *Bailey,* 76 *Ga. App.* 698 (47 S. E. 2d 103). It is the contention of the plaintiff that the evidence of the witness against the operator of the truck, James Edwards, is insufficient to impeach Edwards as a matter of law. Then counsel make this statement: "Furthermore, James Hammond testified as to how the accident occurred contrary to the defendant's circumstantial evidence and his testimony remains uncontradicted." In conclusion it is our opinion as a matter of law that the jury were authorized to find that the witness, James Edwards, was successfully impeached on numerous material and pertinent matters concerning the collision and so also was the witness James Hammond impeached, if indeed he gave any material evidence which would affect the case one way or the other. Then too the same testimony on which the jury was authorized to find that the witness, James Edwards, was impeached would apply also to James Hammond. In so far as the general grounds are concerned the court did not err in denying the motion for new trial.

2. The sole special ground assigns error to the effect that the witness, Mrs. Frank Steinbreugge, testified that she was in her home and heard the crash of the collision and that in about 15 minutes she went in the direction of the sound she heard from the crash; that she expected to find the car in that direction and did find it in that direction. The testimony of this witness that she found the car where she expected to find it on hearing the crash was objected to by counsel for the plaintiff. The court overruled this objection and permitted the witness to testify as to the location of the car when she reached the scene where the car was. In view of this whole record we cannot discern any substantial injury that could have resulted to the plaintiff from the admission of this testimony. This special ground does not require reversal.

The court did not err in denying the motion for new trial.

*Judgment affirmed. Townsend and Carlisle, JJ., concur.*