A09A0385. GEORGIA REAL ESTATE APPRAISERS BOARD
v. KROUSE.
(681 SE2d 737)

BERNES, Judge.

This appeal involves a disciplinary proceeding against a licensed appraiser, Ashby Roy Krouse, III. The Georgia Real Estate Appraisers Board initiated the disciplinary action to revoke Krouse's state certified general real property appraiser classification, alleging that Krouse had violated numerous professional standards in his appraisal of certain real property. Following an evidentiary hearing, the administrative law judge ("ALJ") issued an initial decision concluding that the evidence authorized the revocation of Krouse's appraiser classification. The ALJ's decision was affirmed and adopted in the final order of the reviewing Board. Krouse then filed a petition for judicial review in the superior court. The superior court reversed the Board's decision, concluding that it was not supported by any evidence since the Board failed to present testimony from an expert witness to establish the violations.

We granted the Board's application for discretionary appeal to review the superior court's ruling. We conclude that expert testimony was not required to establish the charged violations and that the record evidence was otherwise sufficient to support the Board's findings. We therefore reverse the superior court's ruling and reinstate the Board's revocation order.

> Under the Administrative Procedure Act, an administrative agency's findings and conclusions may be reversed by the superior court if they are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." OCGA § 50-13-19 (h) (5). This language has been interpreted to preclude review if "any evidence" on the record substantiates the administrative agency's findings of fact and conclusions of law. The presence of conflicting evidence is sufficient to satisfy the any evidence standard. Upon further discretionary appeal to this Court, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency.

(Citation omitted.) *Professional Standards Comm. v. Peterson*, 284

Ga. App. 424, 427 (1) (643 SE2d 899) (2007).

So viewed, the record evidence shows that Krouse was a state certified general real estate appraiser. In August 2002, Krouse was contacted by William Hatcher, the owner of 98.24 acres of land located in Richmond and Burke counties ("the property"). Hatcher sought Krouse's assistance in a tax appeal challenging the tax assessor's re-valuation of the property from $15,900 to $117,888.

During a discussion about the tax appeal and property valuation, Hatcher told Krouse that he would be willing to donate the property to a charitable organization if it was appraised at a value near the $117,000 tax assessment value. Hatcher had previously rejected an adjoining landowner's offer to buy the property for $35,000. He had also rejected a request that he donate the property to the Boy Scouts after the property was appraised at $38,000. Because Hatcher intended to claim a tax deduction based upon the charitable donation, he desired a higher appraised value in order to maximize his tax deduction and savings.

Krouse was a supporter of a charitable organization known as the Hale Foundation, Inc. and was socially acquainted with several board members of that foundation. On September 2, 2002, Krouse attended a social gathering with the co-founder of the Hale Foundation and overheard him discussing the charity's financial status with two other board members. Krouse mentioned that he had a client who was considering donating property to a charity for tax purposes. The co-founder responded that the Hale Foundation would greatly appreciate the donation, on the condition that they could resell the property quickly to yield funds for the charity's operations. Krouse advised the co-founder that the property could be resold for approximately $20,000 on the open market.

On the following day, September 3, 2002, Krouse met with Hatcher to discuss the property. At the meeting, Krouse provided Hatcher with his written appraisal report, designated as a "Valuation Analysis." The appraisal specified that the "purpose of this appraisal is to develop an opinion as to the current market value of the fee simple interest of the subject property" by issuing "a letter form report in lieu of a standard detailed appraisal report." The appraisal stated that the intended use was "to estimate the probable selling price" and that the intended user was Hatcher. In the "Site Description," the appraisal stated that there were "[n]o apparent nuisances, adverse conditions, hazards, or influences exist[ing] in the subject area which would detrimentally affect the value" of the subject property. In the appraisal, Krouse concluded that "the subject property [had] a Market Value as of September 3, 2002, [of] . . . $113,000.00." Krouse certified that "[t]he reported analysis, opinions, and conclusions [were] limited only by the reported as-

sumptions and limiting conditions, and [were Krouse's] personal, unbiased professional analyses, opinions, and conclusions." Krouse further certified that he had "no financial interest, either present or contemplated, in the opinion of value put on this property."

Both Hatcher and Krouse knew that the property was swampland and inaccessible by virtue of it being landlocked. The written appraisal report, however, did not state those facts nor state, as testified by Krouse, that the property had been valued as if it had access. Hatcher and Krouse talked about the possibility of gaining access to the property through an easement by necessity, but Hatcher stated that he was not willing to engage in the necessary legal action. Instead, Hatcher decided to donate the property to a charitable organization in exchange for the corresponding tax benefit.

Krouse asked Hatcher to donate the property to the Hale Foundation. Hatcher agreed to do so and immediately thereafter, Krouse asked Hatcher whether he would mind if the property was purchased by Krouse's wife following the donation. Hatcher responded that he did not care what happened to the property after the donation. Krouse then called his wife and arranged for her to purchase the property from the Hale Foundation for $25,000.

The next day, September 4, 2002, Krouse filed documentation for the tax appeal indicating that the property's value was $25,000, the amount for which it was being sold. The tax assessor resolved the tax appeal by reducing the tax assessment value of the property accordingly.

On September 5, 2002, the real estate closings for both conveyance transactions took place. The parties first closed on the conveyance of the property from Hatcher to the Hale Foundation by deed of gift. Immediately thereafter, the transaction conveying the property from the Hale Foundation to Krouse's wife occurred.

Following Hatcher's donation of the property, he filed his 2002 federal tax return claiming a charitable donation based upon the $113,000 property valuation set forth in Krouse's written appraisal report. The charitable donation yielded Hatcher a tax saving of approximately $37,000.

On the day following the real estate closings, Krouse took a representative of the Georgia Department of Transportation to see the property that his wife had just purchased to ascertain whether the state would be willing to acquire it as part of its ongoing wetlands mitigation project. Approximately two years later, the Department of Transportation purchased the property from Mrs. Krouse, paying her $265,850.

Thereafter, several newspaper articles were published that questioned the legitimacy of the transaction and its handling. The matter

was brought to the attention of the Georgia Real Estate Appraisers Board and an investigation was launched. Krouse was also a licensed real estate broker. In 1999, the Georgia Real Estate Commission had imposed a sanction against Krouse's real estate broker's license as a result of his failure to disclose his interest in a real estate transaction and also as a result of his acting as a broker during a period of time when his license had lapsed. Based upon this prior sanction and Krouse's conduct in the appraisal of the Hatcher property, the Board filed a disciplinary proceeding seeking to revoke Krouse's state certified general real property appraisal classification. At the conclusion of an evidentiary hearing before an ALJ and a review by the Board, Krouse's appraisal classification was revoked. Upon judicial review before the superior court, however, the Board's decision was reversed.

1. The Board contends that the superior court erred in concluding that testimony from an expert witness was required to establish Krouse's violations of the Georgia Real Estate Appraiser Classification and Regulation Act, OCGA § 43-39A-1 et seq., and the rules and regulations promulgated by the Board.[1] We agree.

In support of its decision, the trial court relied upon *Thebaut v. Ga. Bd. of Dentistry*, 235 Ga. App. 194, 202-203 (3) (509 SE2d 125) (1998), where we held that "where the issues of competence and negligence *are of a complicated nature*, expert testimony is required to establish the proper competency standards and whether or not they are met." (Punctuation and footnote omitted; emphasis supplied.) But, as the emphasized language shows, the requirement for expert testimony is not absolute and depends upon the circumstances of the case.

The requirement that expert testimony be adduced in cases involving the alleged breach of professional standards is premised upon the existence of questions "concerning highly specialized expert knowledge with respect to which a layman can have no knowledge at all, [such that] the court and jury must be dependent on expert evidence." (Citation and punctuation omitted.) *Gen. Hosps. of Humana v. Bentley*, 184 Ga. App. 489, 490-491 (361 SE2d 718) (1987). Because the factfinder may not be allowed to speculate about what the professional standards mandate, expert evidence to establish the professional standards is generally required. See *Bilt Rite of Augusta v. Gardner*, 221 Ga. App. 817 (472 SE2d 709) (1996);

---

[1] Although an investigator for the Board and for the Georgia Real Estate Commission testified at the hearing, she did not give any expert testimony explaining the standards and the alleged violations.

*Kellos v. Sawilowsky*, 172 Ga. App. 263, 264 (1) (322 SE2d 897) (1984).

Yet, "evidence of negligence [or a violation of professional standards] in some cases may be so 'clear and palpable' that it may be understood by a [factfinder] without expert evidence as to a professional standard of care." *Bilt Rite*, 221 Ga. App. at 817. See generally *Kellos*, 172 Ga. App. at 264 (1) (holding that expert testimony is necessary to establish the parameters of acceptable professional conduct, *except in clear and palpable cases*).[2] Accordingly, unless otherwise required as a matter of law,[3] when the issues concerning a professional's conduct are not of a complicated nature, and a violation is established by clear and palpable proof, expert testimony is not required. *Bilt Rite*, 221 Ga. App. at 817-819.

The central issue for determination in this case, therefore, is whether the violations for which Krouse was charged are of a complicated nature so as to require highly specialized knowledge and explanation by an expert to understand the parameters of acceptable conduct. In other words, whether expert testimony was required depends upon whether the alleged violations involved conduct and issues easily understood by laypersons who were not themselves certified appraisers.[4]

Krouse was determined to have violated the following statutes and regulations:

- OCGA § 43-39A-14 (a), requiring that an appraiser "bear a good reputation for honesty, trustworthiness, integrity, and competence to transact real estate appraisal activity in such manner as to safeguard the interests of the public";
- OCGA § 43-39A-14 (f), (h) pertinently providing that "[w]henever any occupational licensing body of this state . . . has sanctioned any license or classification of an [appraiser,] . . . such sanction . . . in itself may be a sufficient ground for refusal of an

---

[2] See also *Polec v. Northwest Airlines (In re Air Crash Disaster)*, 86 F3d 498, 524 (II) (A) (3) (6th Cir. 1996) (ruling that "if a violation of professional standards is obvious, expert testimony is unnecessary"); *Day v. Rosenthal*, 170 Cal. App. 3d 1125, 1147 (1) (a) (1985) (ruling that no expert testimony was necessary to establish standard of care where the breaches of professional standards were blatant and egregious).

[3] See OCGA § 9-11-9.1 (requiring malpractice claims against certain professionals to be supported by an expert affidavit). Notably, however, the legislature did not include appraisers on the list of professionals to which the expert affidavit requirements of OCGA § 9-11-9.1 apply. See OCGA § 9-11-9.1 (g).

[4] We note that the Board of Real Estate Appraisers may be comprised of individuals who are professional appraisers having specialized knowledge of any technical issues presented. But, the Board could not rely upon its own expertise to fill the void of absent expert testimony since it failed to advise the parties that official notice would be taken of generally recognized technical or scientific facts within the Board's specialized knowledge. See *Thebaut*, 235 Ga. App. at 200-201 (3).

appraiser classification" or for the imposition of any sanction permitted against an appraiser;

- OCGA § 43-39A-18 (b) (2) prohibiting appraisers from engaging in "[a]n act or omission involving dishonesty, fraud, or misrepresentation with the intent to benefit substantially an appraiser or another person";

- OCGA § 43-39A-18 (b) (8) prohibiting an appraiser from violating "any of the standards for the development or communication of real estate appraisals as promulgated by the [B]oard";

- OCGA § 43-39A-18 (b) (9) and (10) prohibiting an appraiser from "fail[ing] or refus[ing] without good cause to exercise reasonable diligence in developing an appraisal, preparing an appraisal report, or communicating an appraisal," and from engaging in "[n]egligence or incompetence in developing an appraisal, in preparing an appraisal report, or in communicating an appraisal";

- Ga. Comp. R. & Regs. r. 539-3-.02 (1) (c) prohibiting an appraiser from "fail[ing] to employ correctly methods and techniques that are necessary to produce a credible appraisal";

- Ga. Comp. R. & Regs. r. 539-3-.02 (1) (d), (g) prohibiting an appraiser from "committ[ing] a substantial error of omission or commission that significantly affects the appraisal" and "fail[ing] to include in a report of an appraisal sufficient information to enable the person(s) who are expected to receive or rely on the report to understand it properly";

- Ga. Comp. R. & Regs. r. 539-3-.02 (1) (h), prohibiting an appraiser from "perform[ing] an independent appraisal assignment with partiality or an accommodation of personal interest";

- Ga. Comp. R. & Regs. r. 539-3-.02 (1) (e), (j) (2) prohibiting an appraiser from "render[ing] appraisal services in a careless or negligent manner" and requiring appraisers to "tak[e] all steps necessary to complete the assignment competently";

- Ga. Comp. R. & Regs. r. 539-3-.02 (1) (k), (l) prohibiting an appraiser from "report[ing] the results of a real property appraisal without disclosing the nature, extent, and detail of the appraisal processes undertaken" and "fail[ing] to disclose clearly and accurately in the appraisal report any assumption or any limiting condition that directly affects the appraisal and to indicate its impact on value."

To the extent that these statutes and regulations clearly and unambiguously express the professional standards governing an appraiser's conduct, no expert testimony was necessary to establish the standards to which Krouse was bound. We recognize that some of

the standards relate to the appraiser's competency and employment of correct methods and techniques, which usually require further expert testimony to explain the competency standards and proper techniques. But, when the appraiser's alleged conduct is so blatant that it clearly violates the standards, a clear and palpable case has been presented and no expert testimony is required to provide further explanation. See *Bilt Rite*, 221 Ga. App. at 817.

The violations alleged in this case were premised upon Krouse's preparation of a fraudulent or misleading appraisal report that inflated the value of the property and failed to disclose the condition that substantially affected the property value; his failure to disclose his contemplated or prospective interest in the property in the appraisal report; and the prior sanction of his real estate broker's license. The alleged conduct and issues in this case were not of a complicated nature, and merely presented straightforward questions as to the factual basis supporting the allegations, which if proven, would clearly establish a violation of the regulations and standards. As such, any factfinder could easily understand and resolve whether Krouse's actions violated the standards, without the need for an expert's explanation. Under these circumstances, "[t]o require additional expert evidence as a matter of law proving a standard against which to measure the services of this defendant in the facts of this case would unreasonably expand the requirement of expert testimony in professional malpractice cases beyond what is presently the law." *Bilt Rite*, 221 Ga. App. at 819. The superior court's order reversing the Board's revocation decision based upon the failure to present expert evidence therefore misapplied the *Thebaut* ruling and was erroneous as a matter of law.

2. The Board further contends that the trial court erred in ruling that the administrative findings and conclusions were not supported by any evidence in the record. Again, we agree. The record evidence authorized the Board to find that Krouse had violated the professional standards.

As stated above, the violations of the multiple statutory and regulatory provisions were based upon the prior sanction of Krouse's broker's license, Krouse's preparation of a misleading appraisal report to facilitate the instant transaction, and Krouse's conduct reflecting his partiality in performing the appraisal assignment.

There was evidence in support of the Board's allegation that Krouse had induced Hatcher to donate the property based upon an appraisal report that misrepresented the property's value and failed to disclose the assumption or condition upon which the value was based. The evidence reflected that Hatcher had informed Krouse that he would only donate the property to a charity if the appraised value was high enough to allow for a substantial tax deduction. In

turn, Krouse's appraisal report represented that the property value was $113,000 when, in fact, the actual property value was $25,000, by Krouse's own admissions. The appraisal report did not disclose the property's inaccessible condition but, rather, presented a value premised upon access to the property being obtained. Yet, the access condition, which resulted in a substantial $88,000 difference in the property value, was not disclosed in the appraisal report. And, although Krouse testified that his written appraisal report supplemented an oral report that he gave to Hatcher purportedly explaining the conditions, the written appraisal report appeared to be complete on its face and failed to contain a disclosure that it was supplemental to any other report or communication. Hatcher testified that Krouse knew that he intended to rely on the appraisal report for purposes of the tax deduction, and that Krouse did not inform him that the appraisal was limited and could not be used. As a result of the appraisal report, Hatcher misrepresented the value of the property in his tax filing.

The evidence further showed that prior to presenting the appraisal report to Hatcher, Krouse had discussed the possible property donation with the co-founder of the Hale Foundation charity and was aware of the charity's need for a quick resale of the property to yield operating funds. After Hatcher agreed to donate the property to the Hale Foundation, Krouse immediately made arrangements for his wife to purchase the property upon its donation. The real estate closings for the transactions occurred two days later, providing the quick sale that had been desired. The timing and sequence of these events created a strong inference from which the Board could find that Krouse had contemplated that he and his wife would have an interest in the property at the time that he presented the appraisal report.

On the day after the closings, Krouse showed the property to a representative of the Department of Transportation, and the property was sold to the department two years later, providing Krouse's wife with a $240,850 profit. Krouse's conduct in the transaction was publicly questioned in published newspaper articles.

This evidence supported the Board's findings and conclusions that Krouse's conduct violated the statutory provisions and regulations as alleged. The Board was authorized to find that Krouse had violated OCGA § 43-39A-14 (a) requiring an appraiser to bear a good reputation for honesty, trustworthiness, integrity, and competence based upon evidence that Krouse's conduct in the transaction had been publicly questioned. Evidence and Krouse's own admission that his real estate broker's license had previously been sanctioned

in 1999[5] authorized the Board to find that Krouse had violated OCGA § 43-39A-14 (f), (h), which provides for the imposition of a sanction upon an appraiser based upon a prior sanction imposed by any occupational licensing body. Moreover, the evidence of Krouse's misrepresentation of the current market value of the property and failure to disclose the accessibility condition which substantially affected the value in the appraisal report authorized the Board's findings that Krouse had violated the rules governing the preparation and communication of an appraisal report set forth in OCGA § 43-39A-18 (b) (2), (8), (9), (10); Ga. Comp. R. & Regs. r. 539-3-.02 (1) (c), (d), (e), (g), (j) (2), (k), and (l).[6] And, evidence of Krouse's coordination of the transaction further authorized the Board to find that Krouse had violated Ga. Comp. R. & Regs. r. 539-3-.02 (1) (h) by acting with partiality toward the Hale Foundation and toward his wife.

Krouse's arguments pointing to conflicts in the evidence do not require a different result. As previously noted, "[t]he presence of conflicting evidence is sufficient to satisfy the any evidence standard." *Professional Standards Comm. v. Peterson*, 284 Ga. App. at 427. Krouse nevertheless argues that the Board's circumstantial evidence failed to overcome his direct testimony that he and his wife did not have a prospective interest in the property at the time that he presented the appraisal report. It is true that

> [c]ircumstantial evidence from which the existence of a fact might be inferred, but which did not demand a finding for the plaintiff to that effect, will not support a verdict, when by positive and uncontradicted testimony of *unimpeached witnesses*, which was perfectly consistent with the circumstantial evidence relied on by the plaintiff, it was affirmatively shown that no such fact existed.

(Citation and punctuation omitted; emphasis supplied.) *Douglas v. Gilbert*, 195 Ga. App. 796, 798 (395 SE2d 9) (1990). See also *Camp v. Eichelkraut*, 246 Ga. App. 275, 282 (539 SE2d 588) (2000). But, this

---

[5] Krouse's claim that the Board is estopped from relying upon the prior sanction of his real estate broker's license as grounds for revocation was not raised and ruled upon in the administrative proceedings before the Board. Consequently, his claim has been waived and cannot be considered in this appeal. See OCGA § 50-13-19 (c); *State Bd. of Equalization v. Trailer Train Co.*, 253 Ga. 449, 449-450 (320 SE2d 758) (1984); *Ga. Real Estate Comm. v. Burnette*, 243 Ga. 516 (1) (255 SE2d 38) (1979).

[6] See *Berchock v. Council on Real Estate Appraisers*, 2001 Del. Super. LEXIS 162 (April 26, 2001) (finding that appraiser violated professional standards by issuing an inaccurate appraisal report); *Miss. Real Estate Appraiser Licensing &c. Bd. v. Schroeder*, 980 S2d 275, 283-288 (II) (Miss. App. 2007) (same); *Riffe v. Ohio Real Estate Appraiser Bd.*, 719 NE2d 587, 590-591 (Ohio App. 1998) (same).

test does not apply here since Krouse was not an unimpeached witness. Krouse testified at the administrative hearing. His testimony was internally inconsistent and was also inconsistent with several of the assertions he made in the appraisal report. OCGA § 24-9-83. For instance, Krouse initially asserted that the document he furnished Hatcher was not an "appraisal," even though the document expressly stated that it was an appraisal. He later admitted that the document, which gave an "opinion of value," was in fact an "appraisal." In addition, Krouse testified that the $113,000 reflected in the appraisal report as the fair market value of the property was not accurate because it had not been reduced to take into account the cost of obtaining access to the property. Krouse also testified at one point that the fair market value of the property was $25,000. And finally, Krouse asserted that the document was not for Hatcher, while also asserting that the document was only intended for Hatcher. Consequently, because Krouse was successfully impeached on material and pertinent matters, the rule pertaining to circumstantial evidence did not apply. Rather, the evidence was sufficient to create a question of fact, which the Board was authorized to resolve against him. See *Whitley Constr. Co. v. O'Dell*, 94 Ga. App. 426, 432 (1) (94 SE2d 784) (1956).

The "any evidence" rule applies to review of an administrative agency's findings of fact. *Hall v. Ault*, 240 Ga. 585 (242 SE2d 101) (1978); *Professional Standards Comm. v. Peterson*, 284 Ga. App. at 427 (1). There was evidence to support the Board's findings and, therefore, the superior court erred in substituting its judgment for that of the Board. See *Ga. Real Estate Comm. v. Burnette*, 243 Ga. 516 (1) (255 SE2d 38) (1979).

*Judgment reversed. Smith, P. J., and Phipps, J., concur.*

DECIDED JULY 14, 2009

*Thurbert E. Baker, Attorney General, Ekonomou, Atkinson & Lambros, Kirby G. Atkinson, Paul E. Nystrom III*, for appellant.

*Thompson & Smith, Larry I. Smith, Huff, Powell & Bailey, Daniel J. Huff*, for appellee.