**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 15, 2018**

# In the Court of Appeals of Georgia

A18A0042. BARTENFELD v. CHICK-FIL-A, INC. et al.

A18A0043. CHICK-FIL-A, INC. v. BARTENFELD.

MILLER, Presiding Judge.

After tripping and falling over a concrete wheel stop in the parking lot of a Chick-fil-A restaurant, Jeanette Bartenfeld sued Chick-fil-A, Inc. ("CFA") and Christopher Darley, the restaurant's owner and franchisee, on theories of negligence and nuisance. The trial court granted full summary judgment to Darley, ruling that he had no control over the design or repair of the parking lot, and partial summary judgment to CFA, finding that Bartenfeld's negligent design and nuisance claims failed as a matter of law, but that she could proceed against CFA under the "distraction doctrine." Bartenfeld appeals, and CFA cross-appeals. We conclude that both defendants were entitled to summary judgment on all claims because Bartenfeld

failed to establish that a hazard existed. We therefore affirm in part and reverse in part.

To prevail on a motion for summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the undisputed evidence warrants judgment as a matter of law. OCGA § 9-11-56 (c). We review de novo a trial court's ruling on a motion for summary judgment, viewing the evidence in the light most favorable to the nonmovant. *H. J. Wings & Things v. Goodman*, 320 Ga. App. 54 (739 SE2d 64) (2013).

So viewed, the record shows that on the morning of September 26, 2013, Bartenfeld visited a Chick-fil-A restaurant with her nephew and his girlfriend. Bartenfeld's nephew parked the car in a row of parking spaces facing the restaurant on the other side of a drive-through window and lane. A strip of asphalt painted with white hatch marks served as a buffer between the drive-through lane and the parking spaces, and a similarly-marked pedestrian walkway crossed the drive-through lane and led to the restaurant. Centered at the head of each parking space was a low cement barrier, called a wheel stop, intended to prevent parked cars from encroaching into the buffer strip and drive-through lane. Bartenfeld, her nephew, and his girlfriend

exited the car, walked across the drive-through lane next to the pedestrian path, and entered the restaurant.

When the three later exited the restaurant, they followed the same route they had taken to enter. Bartenfeld testified at her deposition that she became distracted by a vehicle stopped at the drive-through window, and she looked in the direction of that vehicle as she crossed the drive-through lane. Once Bartenfeld cleared the drive-through lane and reached the buffer strip, she stopped looking at the drive-through window and instead looked forward. As Bartenfeld approached her car, her foot hit the wheel stop in the parking space next to the one where her car was parked. Bartenfeld tripped and fell, suffering a broken arm and bruises.

In her deposition, Bartenfeld testified that she did not see the wheel stop over which she tripped when she entered or exited the restaurant. There was no car parked in the space containing that wheel stop at either time. The parking lot was black asphalt, and the wheel stop was unpainted cement. According to Bartenfeld, she did not see the wheel stop because it "blended in" with the white hatch marks on the buffer strip and pedestrian path. Bartenfeld admitted that she was familiar with wheel stops and had encountered them previously in other parking lots.

Christopher Darley owned and operated the restaurant as a franchisee, managing day-to-day operations; however, CFA owned the real property and designed the improvements thereon, including the building and parking lot. Shortly before Bartenfeld's fall, CFA resurfaced the parking lot and restriped it with fresh paint. The wheel stops were removed for this work and then replaced following its completion. Darley had no input in the parking lot work.

Bartenfeld sued CFA and Darley, alleging that her fall resulted from their negligence and maintenance of a nuisance. In addition, Bartenfeld sought punitive damages from CFA based upon its alleged violation of professional standards, internal policy, and a municipal code governing the use of wheel stops.

Both defendants moved for summary judgment on all claims. The trial court granted Darley's motion for summary judgment in full, finding that he owed Bartenfeld "no duty . . . with respect to the premises" because the undisputed evidence showed that CFA, not Darley, exercised control over the design of the restaurant's parking lot and the selection and placement of wheel stops.

The trial court granted CFA's motion for summary judgment in part. The trial court found that (1) "any claims based on negligent or defective design or engineering" failed because Bartenfeld "offered no expert testimony regarding the

4

appropriate standard for such engineering and design decisions"; (2) Bartenfeld failed to show that the professional standards she cited had been adopted in Georgia or that a violation of those standards established a hazardous condition; (3) the wheel stop did not present a hazardous condition under Georgia law; (4) there was no evidence to support Bartenfeld's claim of nuisance; and (5) summary judgment was proper on Bartenfeld's claim for punitive damages. However, the trial court denied summary judgment to CFA to the extent that Bartenfeld claimed the drive-through was a distraction.

In Case No. A18A0042, Bartenfeld appeals from the trial court's grant of full summary judgment to Darley and partial summary judgment to CFA. In Case No. A18A0043, CFA cross-appeals from the trial court's denial of its motion for summary judgment with respect to Bartenfeld's "distraction doctrine" claim.

*Case No. A18A0043*

We begin with CFA's cross-appeal, as it is dispositive of the issues before us. CFA argues that "[i]n the absence of evidence that the premises were defectively or negligently designed and engineered or that the wheelstop was a hazardous condition, CFA, Inc.'s motion for summary judgment should have been granted in its entirety." We agree. Bartenfeld's negligence claim sounds in professional negligence and fails

5

for lack of supporting expert testimony that a hazard existed. Further, even if the claim could be characterized as one for simple negligence, it fails because the wheel stop was not a hazard as a matter of law. And in the absence of a hazard, Bartenfeld's nuisance claim also fails.

1. *Professional negligence.*

The trial court ruled that "it appears that [Bartenfeld] is alleging, at least in part, that the parking lot was defectively designed and engineered." We agree with the trial court's characterization of Bartenfeld's allegations and conclude that Bartenfeld presented a claim for professional negligence.

When a hazard results from allegedly negligent design or engineering, then the plaintiff's claim is one for professional malpractice. *Dept. of Transp. v. Mikell*, 229 Ga. App. 54, 56-59 (1) (a) (493 SE2d 219) (1997); see also *H. Elton Thompson & Assoc., P. C. v. Williams*, 164 Ga. App. 571, 572 (298 SE2d 539) (1982). "Whether a complaint alleges ordinary negligence or professional malpractice is a question of law for the court, regardless of how the plaintiff categorizes it." (Citation and punctuation omitted.) *Grady Gen. Hosp. v. King*, 288 Ga. App. 101, 102 (653 SE2d 367) (2007).

Although complaints against professionals may state claims based on ordinary as well as professional negligence, where the allegations of negligence against a professional involve the exercise of professional skill and judgment within the professional's area of expertise, the action states professional negligence. If a claim of negligence goes to the propriety of a professional decision rather than to the efficacy of conduct in the carrying out of a decision previously made, the claim sounds in professional malpractice. However, administrative, clerical, or routine acts demanding no special expertise fall in the realm of simple negligence.

(Citation and footnote omitted.) *Hamilton-King v. HNTB Ga.*, 311 Ga. App. 202, 204 (715 SE2d 476) (2011).

In her complaint, Bartenfeld alleged that the defendants created and maintained a dangerous condition through the use of wheel stops that (1) were identical in appearance to the painted lines designating the buffer strip and pedestrian path and (2) were too close to the drive-through, thereby distracting pedestrians. These allegations challenge CFA's configuration of the parking spaces, drive-through lane, and pedestrian path, as well as the propriety of its choice among various mechanisms to use these specific wheel stops to prevent cars from encroaching beyond the parking spaces. These are design and engineering decisions that "involved the exercise of professional skill and judgment." *Hamilton-King*, supra, 311 Ga. App.

7

at 205 (2). Indeed, as CFA points out, it retained professional architects and engineers to design and construct the improvements on the property, including the parking lot, drive-through, and pedestrian walkways. See *Mikell*, supra, 229 Ga. App. at 56 (1) (a) (holding that "[b]ecause the plaintiffs are challenging the layout of the intersection itself and the choice of traffic control devices which control it, they are asserting that the intersection is negligently engineered and designed").

To support a claim for negligent design or engineering, a plaintiff must present evidence of the applicable standard of care against which to measure the acts of the defendant. *Mikell*, supra, 229 Ga. App. at 58 (1) (a). The plaintiff generally satisfies this requirement by presenting expert opinion testimony. See *Marquis Towers v. Highland Group*, 265 Ga. App. 343, 346 (1) (593 SE2d 903) (2004) ("Expert testimony is required because the court and jury are not permitted to speculate as to the standard against which to measure the acts of the professional in determining whether he exercised a reasonable degree of care.") (punctuation and footnote omitted); see also *Anderson v. Atlanta Gas Light Co.*, 324 Ga. App. 801, 813-815 (2) (751 SE2d 589) (2013). "The exception to this rule is where the alleged professional negligence is so 'clear and palpable' that it may be understood by a jury absent the

8

production of expert testimony." *Minnix v. Dept. of Transp.*, 272 Ga. 566, 572 n. 32 (533 SE2d 75) (2000) (citation omitted).

It is undisputed that Bartenfeld presented no expert testimony concerning the appropriate standard of care by which to measure CFA's design and engineering decisions in this case. Nevertheless, she argues that expert testimony was not required here because the issues are "not beyond the ken of an average juror" and because CFA violated various applicable professional and internal corporate standards. We are not persuaded.

(a) Citing *Pinder v. H & H Food Svcs.*, 326 Ga. App. 493 (756 SE2d 721) (2014) (physical precedent only), Bartenfeld argues that the issues in this case are simple enough that expert testimony is unnecessary. In *Pinder*, however, the plaintiff tripped over a parking bumper that was "sitting about one to one-and-one-half feet up on the sidewalk" with a broken, rusted bolt sticking out of the top. Id. at 495. We held that the plaintiff was not required to present expert testimony to survive summary judgment because her allegations centered on poor maintenance and inadequate lighting. Id. at 498-499 (1).

In this case, by contrast, Bartenfeld challenges the design and configuration of the parking lot structures, not the condition in which CFA maintained them.

9

Bartenfeld has not asserted that CFA had allowed the condition of the premises to deteriorate in an unsafe manner, as was the allegation in *Pinder*. Accordingly, her claim is one for negligent design or engineering, not negligent maintenance. *Pinder*, therefore, does not help her avoid the requirement of providing expert testimony.

(b) In the absence of expert testimony showing the existence of a hazard, Bartenfeld attempts to prove that the wheel stop was hazardous by citing several allegedly authoritative standards prohibiting wheel stops. "[E]vidence of . . . a violation of professional standards in some cases may be so clear and palpable that it may be understood by a factfinder without expert evidence as to a professional standard of care." (Citation and punctuation omitted.) *Ga. Real Estate Appraisers Bd. v. Krouse*, 299 Ga. App. 73, 77 (1) (681 SE2d 737) (2009). To avoid the requirement of presenting explanatory expert testimony, however, the plaintiff must show that the standards were "authoritative" and "mandatory." *Mikell*, supra, 229 Ga. App. at 57 (1) (a). In addition, the standards must "clearly and unambiguously" express the applicable standard of care, and the defendant's conduct must be "so blatant that it clearly violates the standards." *Georgia Real Estate Appraisers Bd.*, supra, 299 Ga. App. at 78-79; see also *Mikell*, supra, 229 Ga. App. at 58 (1) (a) (where authoritative professional standard contemplates the exercise of discretion, or is "permissive and

advisory," it is insufficient to establish standard of care). Here, Bartenfeld fails to demonstrate that the standards she cites were mandatory, clear, and unambiguous, or that CFA blatantly violated them.

First, Bartenfeld asserts that CFA violated the American Society for Testing and Materials' ("ASTM") standard for safe walking surfaces. However, as the trial court noted, ASTM's website expressly states, "ASTM standards are voluntary in that we do not mandate their use." https://www.astm.org/ABOUT/faqs.html.[1] Moreover, CFA's use of the wheel stop was not inconsistent with the ASTM standard because the color of the wheel stop contrasted with the surrounding black asphalt and the wheel stop was not located in the pedestrian walkway.[2] Thus, the ASTM standard did not "clearly and unambiguously" express a standard prohibiting the use of wheel stops, and CFA committed no "blatant" violation of such a standard. See *Ga. Real Estate Appraisers Bd.*, supra, 299 Ga. App. at 77 (1).

_____

[1] We also note that safety standards promulgated by private, voluntary associations generally require expert testimony to "identify, authenticate, and explain them." *Dayoub v. Yates-Astro Termite Pest Control Co.*, 239 Ga. App. 578, 581 (2) (b) (521 SE2d 600) (1999).

[2] The standard provides, in relevant part, that "[p]arking lots should be designed to avoid the use of wheel stops," "[w]heel stops shall not be placed in pedestrian walk way or foreseeable pedestrian paths," and "[w]heel stops shall be in contrast with their surroundings."

Bartenfeld also contends that CFA violated its own internal civil engineering standards regarding the use of wheel stops. "Although a company's private policy may be admissible for the purpose of illustrating negligence (or lack thereof) under circumstances to which the policy would be applicable, the policy does not establish the governing standard of care." (Citations omitted.) *Youngblood v. All American Quality Foods*, 338 Ga. App. 817, 821-822 (792 SE2d 417) (2016) (physical precedent only). Thus, CFA's internal policies cannot, by themselves, substitute for expert testimony establishing the governing standard of care or the existence of a hazardous condition.

In any event, there is no evidence that CFA violated its internal standards. Although CFA's standards note that wheel stops are "only to be used when no other practical option exists," they also provide detailed instructions for the installation of wheel stops. Nothing in the record shows that CFA's standards prohibited the use of wheel stops or that other practical options existed in this case.

Bartenfeld also contends that CFA's standards mandated the use of yellow polymer wheel stops instead of concrete wheel stops.[3] The record shows that, for

---

[3] Bartenfeld asserts that she might not have fallen if CFA had used yellow wheel stops at the restaurant, but this is mere speculation and is therefore insufficient to create an issue of fact to avoid summary judgment. See *Canaan Land Properties*

many years, CFA followed the industry standard of using concrete wheel stops. A few years before Bartenfeld's fall, CFA amended its standards to recommend that wheel stops installed at new CFA locations be made from yellow polymer rather than concrete because polymer is a more durable material. Even after the shift to polymer wheel stops for new locations, however, CFA's internal policy was to replace wheel stops "like for like" at existing store locations, meaning that it would simply replace the same wheel stop that was present at that location, in the absence of damage. Thus, the record does not show that CFA had a clear, mandatory policy requiring yellow polymer wheel stops at all locations.

Finally, Bartenfeld argues that CFA's use of the concrete wheel stops violated the City of Marietta's municipal code, which she claims incorporated a traffic engineering standard recommending that wheel stops be avoided or painted yellow. There is no evidence, however, that the restaurant is located in Marietta and thus subject to that city's municipal code.[4]

---

*v. Herrington*, 330 Ga. App. 17, 19 (1) (766 SE2d 493) (2014) ("A mere possibility of causation is not enough and when the matter remains one of pure speculation or conjecture and the probabilities are at best evenly balanced it is appropriate for the court to grant summary judgment to the defendant.") (citation and footnote omitted).

[4] CFA claims that the restaurant is not located in Marietta.

Because Bartenfeld presented no expert testimony and no evidence that CFA blatantly violated a governing professional standard, her professional negligence claim fails and both CFA and Darley were entitled to summary judgment on that claim.

2. *Ordinary negligence.*

Even if Bartenfeld's negligence claim could be construed as an ordinary negligence claim, she failed to present evidence that the wheel stop constituted a hazardous condition under an ordinary negligence analysis.[5]

"The plaintiff's first burden in a premises liability case is to show the premises were defective or hazardous." (Citation and footnote omitted.) *Cohen v. Target Corp.*, 256 Ga. App. 91, 92 (567 SE2d 733) (2002); see also *Aubain-Gray v. Hobby Lobby Stores*, 323 Ga. App. 672, 674 (1) (747 SE2d 684) (2013) ("the plaintiff's threshold burden" is to demonstrate a defect or hazard). In the absence of "evidence of the existence of a condition that would subject an invitee to an unreasonable risk of injury," the plaintiff cannot recover. (Footnote omitted.) *Garrett v. Hanes*, 273 Ga.

---

[5] Claims for ordinary negligence need not be supported by expert testimony. See *Mikell*, supra, 229 Ga. App. at 59-60 (1) (c).

App. 894, 895 (616 SE2d 202) (2005) (landowner was entitled to summary judgment because there was no evidence that step over which plaintiff tripped was hazardous).

"[O]ccupiers of premises whereon the public is invited to come are not required to keep their parking lots and other such areas free from irregularities and trifling defects. One coming upon such premises is not entitled to an absolutely smooth or level way of travel." *Wright v. JDN Structured Finance*, 239 Ga. App. 685, 686-687 (2) (522 SE2d 4) (1999) (affirming summary judgment to the defendant where the plaintiff alleged that she tripped over a curb and planter in a shopping center). Accordingly, it has long been the law in Georgia that wheel stops and similar static structures are common features of parking lots that should be anticipated by invitees and do not generally constitute hazards. See *McMullan v. Kroger Co.*, 84 Ga. App. 195, 198 (65 SE2d 420) (1951) (concrete bar in parking lot was not a hazard because "it could easily have been seen by anyone with normal vision while walking there and exercising ordinary care for his own safety"); see also *McHugh v. Trust Co. of Ga.*, 102 Ga. App. 412, 412-413 (116 SE2d 512) (1960) ("cement separator" in parking lot presented no unreasonable danger because such structures "can be anticipated by persons traversing a parking lot").

In light of this precedent, Bartenfeld acknowledges that CFA's "mere use of a wheel stop alone does not automatically amount to a hazard." She argues, however, that the wheel stop in this case was a hazard because it "blended in with the striping[,] creating an optical illusion that the wheel stop was not an elevated trip hazard," and because it was positioned near the drive-through window, thereby creating a distraction. Neither of these arguments is persuasive.

(a) With respect to Bartenfeld's "optical illusion" argument, we rejected a similar contention in *Carmichael v. Timothy*, 104 Ga. App. 16 (120 SE2d 814) (1961), and held that a parking divider that allegedly blended in with its surroundings was not a hazard because "there is a duty on the part of parking lot users to anticipate the presence of parking dividers, day or night." Id. at 18 (1); see also *Pirkle v. Robson Crossing, LLC*, 272 Ga. App. 259, 261 (612 SE2d 83) (2005) (plaintiff who alleged that she tripped over a parking lot curb due to an "optical illusion" disguising the curb's height could not survive summary judgment because "there is no evidence, expert or otherwise, that the allegedly 'hazardous' curb was negligently designed, constructed, or maintained").[6]

_____

[6] We have ruled that fact issues exist, however, where the plaintiff has submitted expert testimony to support a claim that a structure was obscured due to an "optical illusion." See, e.g., *Perkins v. Val D'Aosta Co.*, 305 Ga. App. 126 (699 SE2d

Bartenfeld's reliance on *Krystal Co. v. Butler*, 149 Ga. App. 696 (256 SE2d 96) (1979), for the proposition that a parking lot obstruction may pose an unreasonable risk for an invitee is misplaced. In *Krystal*, the plaintiff was forced to walk through the parking lot due to parked cars, trash cans, and trees that blocked a pedestrian walkway. The plaintiff tripped over a "speed breaker" that was the same color and material as the pavement. Id. at 696. We held that the multiple obstructions in the pedestrian walkway "and the evidence of a failure to distinguish the speed breaker by color" could demonstrate a hazardous condition. Id. at 697. In this case, however, nothing obstructed Bartenfeld from using the marked pedestrian walkway; the object over which she tripped was a wheel stop, a common feature of parking lots; and the wheel stop's natural cement color contrasted with the surrounding black asphalt. Thus, Bartenfeld's reliance on this case is unavailing.

(b) We also find no merit in Bartenfeld's assertion that the wheel stop was hazardous because of its proximity to the drive-through window. First, this claim falls entirely within the realm of negligent design and engineering and thus fails as

380) (2010) (plaintiff who fell from a curb that he described as an "optical illusion" submitted the affidavit of an expert professional engineer, who opined that the curb was defective and presented a fall hazard); *Hagadorn v. Prudential Ins. Co.*, 267 Ga. App. 143 (598 SE2d 865) (2004) (similar facts). Again, Bartenfeld offered no expert testimony.

17

discussed in Division 1, supra. Second, Bartenfeld testified that when she fell, she had already successfully traversed the drive-through lane, was no longer even looking at the drive-through window, and was instead looking forward. "This testimony refutes any claim that [Bartenfeld] was distracted by concerns over traffic hazards immediately before the fall." *Wiley v. Family Dollar Store of Swainsboro, Ga.*, 208 Ga. App. 461, 462 (430 SE2d 839) (1993).

In sum, because Bartenfeld failed to present evidence of a hazard under theories of either professional negligence or ordinary negligence, the defendants were entitled to summary judgment on her negligence claim.

3. *The "distraction doctrine."*

Although the trial court found that there was no hazard here, it proceeded to conclude that an issue of fact existed as to whether Bartenfeld was distracted by the drive-through. In this respect, the trial court erred.

The distraction doctrine "holds that one is not bound to the same degree of care in discovering or apprehending danger in moments of stress or excitement or when the attention has been necessarily diverted." (Citation and punctuation omitted.) *Robinson v. Kroger Co.*, 268 Ga. 735, 744 (2) (A) (493 SE2d 403) (1997). The distraction doctrine "is not an independent theory of recovery but may operate to

18

excuse or negate a plaintiff's failure to discover the hazard when the source of the distraction is attributable to the defendant." *Wallace v. Nissan of Union City*, 240 Ga. App. 658, 661 (2) (524 SE2d 542) (1999). Thus, the distraction doctrine is relevant only if the plaintiff has established that a hazard exists and that the defendant had superior knowledge of that hazard.

As explained in Divisions 1 and 2, supra, Bartenfeld failed to carry her threshold burden of establishing that a hazard existed. Accordingly, the trial court erred by permitting a "distraction doctrine" claim to survive summary judgment, as there exists no such independent claim. We therefore reverse that portion of the trial court's order.

*Case No. A18A0042*

In her appeal, Bartenfeld argues that the trial court erred by finding that she asserted a claim for professional negligence. For the reasons discussed in Division 1, supra, we find no merit in this argument. Bartenfeld also argues that the trial court erred by rejecting her nuisance and punitive damages claims and by awarding summary judgment to Darley. We disagree.

4. *Nuisance.*

To recover on a nuisance claim, the plaintiff must first show the existence of a nuisance. *Bord v. Hillman*, 335 Ga. App. 18, 21 (1) (780 SE2d 725) (2015). Specifically, "there must be the maintenance of a *dangerous condition* on a continuous or regular basis over a period of time in which no action or inadequate action is taken to correct the condition after knowledge thereof." (Capitalization omitted; emphasis supplied.) *City of Bowman v. Gunnells*, 243 Ga. 809, 810 (1) (256 SE2d 782) (1979). As explained in Divisions 1 and 2, supra, Bartenfeld failed to show that a dangerous condition existed. Accordingly, the trial court properly granted summary judgment to the defendants on her nuisance claim. See *Nemeth v. RREEF America*, 283 Ga. App. 795, 797-798 (1) (643 SE2d 283) (2007) (affirming summary judgment for defendants on plaintiff's premises liability and nuisance claims because defendants lacked superior knowledge of any hazard).[7]

5. *Punitive damages.*

---

[7] In light of this conclusion, we need not address Bartenfeld's contention that the defendants were on notice of a continuing hazard because three other customers allegedly tripped and fell over wheel stops in the parking lot during the 13 years that the restaurant was open prior to Bartenfeld's fall.

20

"Under Georgia law, a plaintiff cannot recover punitive damages when the underlying tort claim fails." *Lewis v. Meredith Corp.*, 293 Ga. App. 747, 750 (5) (667 SE2d 716) (2008). Accordingly, CFA was entitled to summary judgment on the punitive damages claim.

6. *Darley's liability.*

Bartenfeld contends that Darley was not entitled to summary judgment because he had a nondelegable duty to protect invitees from injury. Without any evidence of a hazardous condition, however, there is no basis for holding Darley liable. See *Garrett*, supra, 273 Ga. App. at 895. The trial court therefore did not err by granting summary judgment to Darley.

In conclusion, we affirm the trial court's grant of full summary judgment to Darley and grant of summary judgment to CFA on Bartenfeld's claims for negligent design or engineering, nuisance, and punitive damages. We reverse the trial court's denial of summary judgment to CFA on any ordinary negligence or "distraction doctrine" claim. Both defendants were entitled to summary judgment on all claims.

*Judgment affirmed in part and reversed in part. Andrews and Brown, JJ., concur.*