**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 24, 2014**

# In the Court of Appeals of Georgia

A13A1758. PINDER v. H & H FOOD SERVICES, LLC d/b/a
    KENTUCKY FRIED CHICKEN.

MᴄMɪʟʟɪᴀɴ, Judge.

Donna Pinder appeals from the trial court's decision granting summary judgment to H & H Food Services, LLC, d/b/a Kentucky Fried Chicken ("H&H"), in her claim for injuries suffered in a fall on H&H's premises in Vidalia, Georgia (the "Property"). We reverse for the reasons set forth below.

> Summary judgment is proper when there is no genuine issue of material fact as to any essential element of a claim and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Word of Faith Ministries, Inc. v. Hurt*, 323 Ga. App. 296, 296 (746 SE2d 777) (2013).

Here, the record evidence shows that on March 16, 2008, Pinder, her great niece, her boyfriend, and two other friends, Johnny and Jenevive McRorie, went to the Kentucky Fried Chicken restaurant (the "KFC") on the Property for dinner. Pinder had never been to the Property before. That night, the group arrived at approximately 6:00 to 6:30 p.m., when it was still light outside. The McRories arrived first. Johnny McRorie stated that he stood at the door waiting for Pinder and the others to come in, and he watched Pinder walk across the parking lot. At that time he observed that a parking bumper next to the handicap ramp was out of place and sticking into the parking space. Johnny McRorie stated that for Pinder and her party to have entered the restaurant they would had to have walked through the parking space with the loose bumper where she later fell and would either have crossed over it or walked near it, but he did not know how close Pinder came to the bumper.

When Pinder's group left the restaurant at around 7:30 p.m., Pinder said "it was dark or getting dark." When they exited the restaurant, the weather was clear and the pavement was dry, but Pinder stated that "there [was not] enough lighting." She said

2

the restaurant had no lights in this area of the building, and although it was "not pitch dark," "not black-black," "it was dark."[1]

After exiting the building, Pinder stood on the sidewalk outside the door talking with the McRories, while her boyfriend and her great niece went to the truck. After saying good-bye to her friends, Pinder turned toward the area with the handicap ramp, which was perpendicular to the sidewalk and slanted down toward the surface of the parking lot. The McRories had already left the immediate area, so nothing distracted Pinder as she walked toward the ramp. She was not looking down as she approached the ramp, but instead was looking straight ahead to check for traffic in the parking lot. However, Pinder looked down right before she stepped off the sidewalk. Nothing obstructed her view, and she observed that the top of the ramp appeared to be flush with the sidewalk. The photographs of the ramp show, however, that it was not completely flush with the sidewalk; rather, the sides of the ramp sloped down to the parking lot, leaving a step down from the sidewalk to the parking lot surface at

---

[1] Johnny McRorie testified, however, that although it was "just about dark," it was "lit up good in the parking lot" and you could see where you were going. Jenevive McRorie recalled that it was still daylight when they left the restaurant, and she had no trouble seeing at the time.

the edges of the ramp. And it is undisputed that in March 2008, no signs or yellow paint existed near the handicap ramp to warn of any height differential.

Pinder stated that when she "stepped down, [her] foot got caught." Pinder placed her right foot on the ramp without incident, but when she stepped with her left foot, her foot "went sideways," "twisted" and "rolled a little bit." The front part of her shoe then caught between the ramp and the parking bumper. Although she had intended to step from the sidewalk to the ramp, she actually stepped with her left foot from the sidewalk directly to the parking lot. She then started "twisting and turning" and fell into the vehicle that was parked there. Pinder landed on her right knee[2] and rolled over into a sitting position on the ramp.

After her fall, Pinder called out to the McRories to say that she had fallen over the parking bumper. Johnny McRorie went back to check on Pinder, and he observed that she was lying with her bottom on top of the parking bumper, and then she got up and braced herself against the tire of the car parked next to the ramp. Jenevive McRorie, who saw Pinder stumble and watched her fall, said that she landed on her buttocks.

---

[2] Although Pinder's knee was bleeding, bruised, and swollen, her primary injury was to her ankle, which required a visit to the emergency room that night and subsequent surgeries and physical therapy.

While Pinder was sitting there waiting for medical help, she took pictures of the area with her phone. As she did so, she noticed that the concrete bumper was loose and out of place. Johnny McRorie stated that the parking bumper "was slap up off the ground turned around [with] the bolt sticking up." He said the bumper was sticking up about three inches from the ground and the bolt was also about three inches out of the top. McRorie said that the parking bumper must have been in that condition for a while because the bolt was broken and rusted. He noted that the condition of the bumper was not hidden, and he had no trouble seeing it that night. Jenevive McRorie presumed that Pinder had tripped over the parking bumper, because it was sitting about one to one and one-half feet up on the sidewalk. She said that it must have taken "several licks . . . from cars" to get it up there.

The photograph Pinder took of the bumper that night apparently could not be located at the time of her deposition, although a series of photographs taken from a cell phone showing the ramp and the bumper were used in later depositions. Those photographs appear to show the parking bumper angling from the handicap ramp toward the sidewalk. An H & H employee identified the photographs as accurately depicting how the Property's ramp and parking bumper appeared in March 2008.

After Pinder's fall, H & H employee Amanda Fraser questioned Pinder and Johnny McRorie, and she completed an incident report based on the information they provided. Fraser stated, and the form reflects, that Pinder reported that her foot "got caught behind one of the parking bumpers" as she "was coming off the sidewalk." Pinder told Fraser that she had twisted her ankle and scraped her knee in the fall.

Pinder consulted a lawyer four days after her fall, and about one month later, Pinder and her boyfriend went back to the Property to take pictures. By that time, she said repairs had been made to the parking bumper. The McRories also returned to the restaurant three to four weeks later, and they observed that the parking bumper had new bolts in it and was put back in place.

However, H & H employees testified that no repair or maintenance work was performed on the handicap ramp or the parking bumpers either before or after March 2008, until the entire facility was demolished and rebuilt to current KFC standards in August 2010.[3] And it is undisputed that no falls had occurred on the Property prior to Pinder's accident. Moreover, H & H[4] employees stated that the company had a

---

[3] The parking lot was reconfigured as apart of this renovation, and the handicap ramp and the parking bumper no longer exist.

[4] In addition to owning the Property, H & H was the franchisee for the KFC franchise on the Property.

regular safety inspection procedure, in which employees examined the parking lot several times throughout the day "just to make sure there's nothing that needs to be turned in or reported as far as damages are concerned." Additionally, maintenance personnel inspected all of H & H's properties approximately once per week to look for "any obvious maintenance issues." And prior to March 2008, H & H had not received any recommendation that the ramp or the bumpers be repaired,[5] nor had it received any formal complaints about the ramp or bumpers.[6]

Pinder filed suit on February 1, 2010, and H & H answered and subsequently filed a motion for summary judgment. Following a hearing, the trial court granted that motion, finding that no issue of material fact existed regarding whether the handicap ramp was improperly designed or constructed, whether the parking bumper or its state of repair caused or contributed to the fall, or whether the lighting in the area was

---

[5] The company's insurance company conducted periodic safety inspections.

[6] One shift supervisor, however, recalled hearing one or two regular customers comment that although no problem existed in walking up the ramp if an individual watched where he was going, "that little lip [or curb at the top of the ramp] . . . sometimes may possibly grab somebody[, that is, snag a foot or something] ." He described these comments as mere "concerns," because if the customers had made a complaint, he would have had to report it and he made no reports. The shift supervisor could not recall, however, whether these comments were made before or after Pinder's fall.

deficient. The trial court further found that Pinder failed to present any issues of fact as to whether H & H possessed actual or constructive knowledge of the alleged dangerous condition or whether H & H had superior knowledge of such condition. The court also concluded that Pinder was negligent as a matter of law for walking in the dark. We find, however, that in reaching these conclusions, the trial court failed to construe the evidence in Pinder's favor as required on motion for summary judgment and erred in applying the law to the evidence. We conclude, instead, that issues of fact remain precluding summary judgment.

As a general matter,

> [t]o recover on a theory of premises liability, a plaintiff must show injury caused by a hazard on an owner or occupier of land's premises or approaches that the owner or occupier should have removed in the exercise of ordinary care for the safety of the invited public. When a premises liability cause of action is based on a "trip and fall" or "slip and fall" claim – and the lion's share of premises liability cases are – we have refined this general test down to two specific elements. The plaintiff must plead and prove that: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control.

8

(Citations omitted.) *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 444 (2) (679 SE2d 25) (2009).

However, Pinder's burden "concerning the second prong is not shouldered until [H&H] establishes negligence [on her part], i.e., that [Pinder] intentionally and unreasonably exposed [herself] to a hazard of which [she] knew or, in the exercise of ordinary care, should have known." (Citation and punctuation omitted.) *Davis v. GBR Properties, Inc.*, 233 Ga. App. 550, 552 (1) (504 SE2d 204) (1998). See also *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (2) (b) (493 SE2d 403) (1997). And our Supreme Court has clarified

> that issues such as how closely a particular retailer should monitor its premises and approaches, what retailers should know about the property's condition at any given time, how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that, in general, must be answered by juries as a matter of fact rather than by judges as a matter of law.

*Brown*, 285 Ga. at 445 (2).

On appeal, Pinder argues that the trial court erred in finding that no issues of material fact existed with regard to (1) the existence of a hazardous condition on the

9

Property; (2) H & H's actual and/or constructive knowledge of the hazardous condition; and (3) her own negligence contributed to her fall.

Although the evidence is somewhat conflicting as to the circumstances surrounding Pinder's fall, construing the evidence in her favor, as we must, it shows that the drop-off between the sidewalk and the parking lot at the edges of the ramp was not discernible from her vantage point that evening in what she contends was inadequate lighting. Moreover, the Property had no paint, signs, or other warnings of the drop down. When Pinder stepped off the sidewalk with her left foot, she intended to place it on the ramp as she had with her right foot, but instead her left foot landed further down on the parking lot surface. As she landed, the front part of her shoe caught between the ramp and the loose parking bumper resulting in her injuries, and she fell, injuring her ankle.

1. We find issues of fact in the record as to whether the conditions on the Property at the time of Pinder's fall created a hazard.

Although Pinder produced no expert testimony to demonstrate any flaw in the construction or design of the handicap ramp, she is not attacking the ramp's design or the construction per se. Rather, she asserts that given the ramp's design and the

hazard it created, H & H was negligent in failing to warn of a change in elevation that was not otherwise discernible under the conditions.

Pinder was not necessarily required to present expert evidence on this claim in order to survive summary judgment because nothing in the appellate record indicates that a determination of whether a hazard existed in this case requires a specialized expertise:

> It is the established rule in Georgia, that where (a) the path from evidence to conclusion is not shrouded in the mystery of professional skill or knowledge, and (b) the conclusion determines the ultimate issues of fact in a case, the jury must make the journey from evidence to conclusion without the aid of expert testimony.

(Citations and punctuation omitted.) *Hadden v. ARE Properties, LLC*, 280 Ga. App. 314, 316 (1) (633 SE2d 667) (2006). See *Sotomayor v. TAMA I, LLC*, 274 Ga. App. 323, 326 (1) (617 SE2d 606) (2005) (physical precedent only) (expert testimony not required regarding duty of landlord to install barrier curbs in apartment parking lot). We conclude that the evidence here was sufficient to create a jury issue as to whether the lack of warning created a hazard.

In granting summary judgment, the trial court noted that Pinder "argues that she did not expect a change in elevation, yet states . . . that she looked down in the

area in which she was walking and did in fact 'step down' when her foot popped and twisted." But the trial court erred in focusing solely on Pinder's choice of the phrase "step down," and in construing that language against her, because by choosing that phrase, Pinder could have meant that she intended to "step down" the slanted handicap ramp, not that she knew she was stepping off the sidewalk to the surface of the parking lot. The court ignored the remainder of Pinder's testimony that she could not detect a change in elevation as she approached the ramp, that she intended to place her left foot on the ramp, alongside her right foot, and the unexpected change in elevation forced her to step down on the parking lot instead of on the ramp.

Moreover, the trial court erred in finding "no evidence to show how the parking bumper or the state of the parking bumper was the basis for the fall or subsequent injury." Johnny McRorie testified that Pinder called out to say that she had tripped over the bumper, and when he returned she was on top of it. Both of the McRories testified that the bumper was up in the air, and Jenevive McRorie testified that the bumper was up on the ramp, and she presumed that Pinder's "foot caught on that bumper guard that was up there." Pinder reported to the manager that her foot got caught between the bumper and the sidewalk, and the cell phone photographs appear

12

to show the bumper slanting toward the sidewalk. We find this evidence sufficient to create a jury issue as to whether the parking bumper created a hazard.

Similarly, the trial court erred in determining that no jury issue existed regarding the adequacy of the lighting, noting that Pinder stated that nothing obstructed her view when she looked down right before stepping off the sidewalk. But Pinder also testified that it was dark, the lighting was inadequate, and she could not detect the change in elevation. Once again, we find that the trial court improperly construed Pinder's testimony against her, by isolating her statement that nothing obstructed her view from the remainder of her testimony.[7] Although the McRories contradicted Pinder's description of the lighting in the area, this discrepancy only created a jury issue as to whether the lighting was inadequate.

---

[7] Pinder was questioned as follows:

Q: Was there anything obstructing your view in any way if you had looked down?"
. . .
A: It wasn't – no, there was nothing obstructing my view. . . . I mean, other than the vehicle [that] was parked up here, you know.
Q: Well, did the parked vehicle obstruct your view of where you were walking?
A: No, sir. When you're walking towards that ramp, it looks like it is all flushed together. . . .
Q: Did you ever look at the spot where you put your foot before you put your foot there?
A: I looked and it looked flush and that's when I put my foot there.

13

Accordingly, factual issues remain as to whether any of these factors, or a combination thereof, created a hazard.

2. Moreover, "[i]n support of a summary judgment motion, the defendant in a slip-and-fall action . . . bears the onus of establishing the nonexistence of every material fact, namely, disproving its actual knowledge and pointing out the absence of evidence of its constructive knowledge of the alleged hazard." *Burnett v. Ingles Markets, Inc.*, 236 Ga. App. 865, 867 (514 SE2d 65) (1999). The evidence here shows that the change in elevation at the sides of the ramp, the lack of any warning regarding that change, and the amount of lighting in the area were static conditions.[8] Accordingly, H & H was, at least, on constructive notice regarding these conditions, "as an owner/occupier is generally on constructive notice of what a reasonable inspection would reveal. Certainly, a reasonable inspection would reveal the slanted nature [of the edge of handicap ramp as it met the sidewalk] and the fact that the [sidewalk] had not been painted yellow or orange to alert pedestrians to any danger." *Hagadorn v. Prudential Ins. Co.*, 267 Ga. App. 143, 146 (598 SE2d 865) (2004) (finding that property owner was on constructive notice of the slanted cement

---

[8] We note that the record contains no evidence that any lights in the area were not working, so we must consider the amount of lighting to be a static condition.

14

surrounding a culvert and the lack of any paint to mark potential danger). See also *Davis*, 233 Ga. App. at 551-552 (1) (no question existed that the owners were charged with knowledge of the static condition of their own handicap ramp). Similarly, any inspection by H & H would have revealed the view of the handicap ramp as approached from the sidewalk and the amount of lighting in the area. Accordingly, H & H must be charged with knowledge of all these conditions. *Perkins v. Val D'Aosta Co.*, 305 Ga. App. 126, 129 (699 SE2d 380) (2010) (owner charged with knowledge of the lighting conditions, the curb's height in relation to parking lot, the view of curb for someone descending stairs, and the absence of any paint or warning signs).

Further, the McRories' testimony about the rusted condition of the bolt in the parking bumper and the location of the bumper before and after Pinder's fall raises a jury issue as to how long the bumper's condition had existed. Although the evidence shows that H & H's procedure was to inspect the parking lot several times per day, no evidence exists regarding who performed any such inspection, or at what time it was conducted, on the day of Pinder's fall. The evidence also does not indicate the position or condition of the parking bumper during any such inspection.

15

[S]ummary adjudication as to constructive knowledge arising from the duty to inspect is not authorized absent plain, palpable and undisputable proof that customary inspection procedures or cleaning practices were in place, were actually followed and were adequate to guard against known or foreseeable dangers at the time of the patron's alleged injuries.

(Citation omitted.) *Ramotar v. Kroger Co.*, 322 Ga. App. 28, 30-31 (743 SE2d 591) (2013). See also *Burnett*, 236 Ga. App. at 867-868. Because the evidence in this case is not plain, palpable and undisputable, a jury issue also exists regarding whether H & H should have discovered the condition of the parking bumper prior to Pinder's fall.

3. We also find that issues of fact exist regarding whether Pinder should have seen the hazard and whether she exercised reasonable care for her own safety (i.e., whether she was negligent).

"[A] plaintiff's lack of ordinary care for personal safety is generally not susceptible of summary adjudication, and summary judgment is granted only when the evidence is plain, palpable, and undisputed." (Citation and punctuation omitted.) *Belcher v. Kentucky Fried Chicken Corp.*, 266 Ga. App. 556, 560-561 (2) (597 SE2d 604) (2004). See also *Robinson*, 268 Ga. at 748 (2) (b). Moreover,

16

[e]very negligence case must be judged by its own facts. Where it is alleged that due to one or a combination of circumstances a hazard, although otherwise patent, was not seen or noticed by the plaintiff because its construction or maintenance created an optical illusion which made it appear that such hazard did not in fact exist, it is usually a jury question, unless this court can say as a matter of law that such combination of facts as alleged could not create the sensory impression alleged, whether the maintenance of the premises in the manner alleged constitutes negligence.

*Butts v. Academy of Beauty, Inc.*, 117 Ga. App. 222, 223 (3) (160 SE2d 222) (1968) (finding complaint stated cause of action in response to general demurrer). Taking into account all the circumstances in this case, we cannot conclude, as a matter of law, that Pinder failed to exercise ordinary care for her own safety.

In reaching this conclusion, we are mindful that where a case involves allegedly dangerous static conditions,

the rule is well established that the basis of the proprietor's liability is his superior knowledge and if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does.

17

(Citation omitted.) *Brewer v. Atlanta South 75, Inc.*, 288 Ga. App. 809, 810 (655 SE2d 631) (2007). Accordingly, "a claim involving a static defect differs from other slip and fall cases in that when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have equal knowledge of it and cannot recover for a subsequent injury resulting therefrom." (Citation and punctuation omitted.) *Perkins*, 305 Ga. App. at 128.

But here, no evidence exists that Pinder actually negotiated either the ramp[9] or the parking bumper on her way into the KFC, and Pinder's testimony that she could not detect the height differential from her perspective on the evening of her fall is sufficient to raise a jury issue as to whether she exercised reasonable care for her own safety. See *Hagadorn*, 267 Ga. App. at 146-147 (reversing grant of summary judgment where plaintiff testified that from her vantage point, she could not see that pavement near culvert sloped dramatically and could not appreciate the danger

---

[9] Moreover, even if Pinder had walked up the ramp on her way in the KFC, a question of fact would still remain as to whether she could have detected the change in elevation at the point she stepped off the sidewalk, given her testimony regarding the optical illusion that made it appear that the place she stepped was flush with the sidewalk. See *Myers v. Harris*, 257 Ga. App. 286, 287-288 (1) (570 SE2d 600) (2002); *Christensen v. Overseas Partners Capital, Inc.*, 249 Ga. App. 827, 829-830 (2) (549 SE2d 784) (2001); *Shackelford v. DeKalb Farmer's Market, Inc.*, 180 Ga. App. 348, 351 (2) (349 SE2d 241) (1986).

involved); *Myers v. Harris*, 257 Ga. App. 286, 287-288 (1) (570 SE2d 600) (2002) (reversing summary judgment where plaintiff testified that furniture in showroom camouflaged the fact floor dropped off onto the ramp below, even where plaintiff had previously negotiated the ramp up to the raised floor); *Christensen v. Overseas Partners Capital, Inc.*, 249 Ga. App. 827, 829-830 (2) (549 SE2d 784) (2001) (reversing grant of summary judgment where plaintiff testified that she could not see sunken condition at the bottom of handicap ramp, even where plaintiff previously walked up the ramp to enter building); *Pennington v. Cecil N. Brown Co.*, 187 Ga. App. 621, 624 (3) (371 SE2d 106) (1988) (evidence of optical illusion caused by ice on a black asphalt surface of a parking lot precluded summary judgment); *Shackelford v. DeKalb Farmer's Market, Inc.*, 180 Ga. App. 348, 351 (2) (349 SE2d 241) (1986) (reversing summary judgment where evidence showed that rain created optical illusion that seemingly caused parking bumpers to "merge" with the pavement). Compare *Gibson v. Symbion, Inc.*, 277 Ga. App. 721, 721-722 (627 SE2d 84) (2006) (summary judgment appropriate where plaintiff, who fell walking down a handicap ramp, stated that height differential was not visible for her vantage point, but admitted that she did not look down before stepping); *Poythress v. Savannah Airport Comm.*, 229 Ga. App. 303, 305 (2) (494 SE2d 76) (1997) (summary judgment

appropriate where plaintiff and her husband never testified that ramp blended into sidewalk, but rather stated that the slope of the ramp was clearly visible); *Rossano v. American Legion Post No. 29*, 189 Ga. App. 610, 611-612 (2) (376 SE2d 698) (1988) (affirming summary judgment where plaintiff had traversed ramp on numerous occasions and usually had to negotiate around a car that habitually parked on that ramp, but nevertheless chose to traverse when lighting conditions were "darker than usual").

*Judgment reversed. Dillard, J., concurs. Andrews, P. J., concurs in judgment only.*