A10A0413. PERKINS et al. v. THE VAL D'AOSTA COMPANY.
(699 SE2d 380)

ADAMS, Judge.

Morrell K. and Doris Perkins filed suit against The Val D'Aosta Company arising out of a slip and fall incident involving Morrell Perkins on March 24, 2006. The Perkinses appeal from the trial court's grant of summary judgment in favor of the Company. For the reasons set forth below, we reverse.

> On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the movant to judgment as a matter of law.

(Punctuation omitted.) *Bone v. The Children's Place*, 297 Ga. App. 367 (677 SE2d 404) (2009).

So viewed, the evidence shows that the Company owns and operates the Comfort Inn in Valdosta, Georgia. On or around March 21, 2006, Morrell Perkins checked into the Comfort Inn for a two-to-three-day stay, along with his wife Doris, and his daughter, Jeanette Graves. On March 24, after checking out of the hotel, Perkins descended the hotel stairs from his second-floor room with his "little attache case" in his hand and turned left toward the parking lot, walking along the porch of the hotel. He then stepped off a curb[1] from the porch to the parking lot. Perkins described the curb as "just a regular curb, seven or eight inches high." He said that he just stepped off the curb and fell into the bushes and onto some bricks, breaking his ankle. He said that he did not see the curb. Doris Perkins was behind her husband at the time, and she said the drop from the porch to the landing was "maybe two or three inches taller than the normal step down." She said, "he just stepped down off of that tall thing, and it threw him and he fell over into the shrubbery on the left."

Perkins stated that he was not sure if he had gone down the stairs and stepped off the curb before, "but most likely I had because

---

[1] Although the parties referred to the alleged defect as both a "curb" and a "step," we will refer to it as a curb for ease of reference and to avoid confusion.

I think we went out to eat. And my car was parked right by where I fell." He did not move the car during his stay. Doris Perkins stated that she did not recall how many times they may have gone up and down the curb, but "probably once in the morning and back at night." Thus, she conceded that Perkins had negotiated the curb before, but clarified that "[i]f you watched all the time, you could do it, but you had no warnings."

Perkins stated that he did not see any signs in the stairwell alerting him to the curb, and Doris agreed. She said there were no signs and "not a single thing was painted," although other steps at the hotel were painted to highlight their existence; nor were there any handrails. According to Doris, it was very difficult to tell that there was a step down when one approached the curb after descending the stairs, describing it in an affidavit as "an optical illusion." Perkins described the area at the curb as well-lit at mid-morning when he fell, and he did not recall any foreign substances on the curb at the time. But Doris said the area was not well-lit, as it was shaded from the morning sun.

The Perkinses also rely upon the affidavit of their expert, S. W. Liebmann, a professional engineer. Liebmann examined the curb in question at the Comfort Inn and determined that it was defective and constituted a fall hazard for persons descending the stairs, turning left and stepping off the curb toward the parking lot for the following reasons: (a) the riser height violates the applicable building codes, which have a maximum riser height of seven inches; (b) the stair handrail is slightly short of the code requirement; (c) the lighting was very poor; (d) the steps in the stairwell were dirty, discolored and dark; (e) there is no warning sign visible to a person descending the stairs and turning left to use the curb; (f) there was no handrail at the curb where Perkins was injured; (g) the traffic pattern should have been routed straight down the stairs to the existing ramp to the parking lot, rather than turning 90 degrees toward the curb; and (h) the curb should have been painted.[2] He also expressed the opinion that single steps such as the curb in this case generally present serious hazards, which require some kind of warning.

The Company presented no evidence but moved for summary judgment on the Perkinses' evidence, arguing that they failed to prove that the curb was a hazard or that the Company had actual or constructive notice of such hazard. They also argued that because both Morrell and Doris Perkins admitted that Perkins had traversed

---

[2] The Perkinses also presented photographic evidence supporting this description of the property.

the curb before the fall, he must be charged with equal knowledge of any hazard, and thus is barred from recovery as a matter of law. The trial court granted the motion for summary judgment without explanation.

In a premises liability suit based on a "trip and fall" or "slip and fall" claim,

> [t]he plaintiff must plead and prove that: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control.

(Footnote omitted.) *American Multi-Cinema v. Brown*, 285 Ga. 442, 444 (2) (679 SE2d 25) (2009). As to the first prong, even where there is no proof of actual knowledge, the failure to discover an alleged defect "through the exercise of reasonable care in inspecting the premises gives rise to constructive knowledge where the owner or occupier had an opportunity to discover the dangerous condition and to remedy it." (Footnotes omitted.) *Cocklin v. JC Penney Corp.*, 296 Ga. App. 179, 182-183 (674 SE2d 48) (2009).

And where, as here, the case involves allegations of a static, dangerous condition,

> the rule is well established that the basis of the proprietor's liability is his superior knowledge and if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does.

(Citations omitted.) *Brewer v. Atlanta South 75*, 288 Ga. App. 809, 810 (655 SE2d 631) (2007). Accordingly, "a claim involving a static defect differs from other slip and fall cases in that when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have equal knowledge of it and cannot recover for a subsequent injury resulting therefrom." (Punctuation omitted.) *Trans-Vaughn Dev. Corp. v. Cummings*, 273 Ga. App. 505, 508 (615 SE2d 579) (2005). See also *Gantt v. Dave & Buster's of Ga.*, 271 Ga. App. 457, 458 (610 SE2d 116) (2005) (equal knowledge imputed where customer stepped up to game area, and fell when she stepped back down). Nevertheless, "[t]he rule imputing knowledge of a danger to a person who has successfully negotiated an alleged dangerous condition before applies only to cases

involving a static condition that is 'readily discernible' to a person exercising reasonable care for his own safety." (Citation omitted.) *Rutherford v. Revco Discount Drug Centers*, 301 Ga. App. 702, 704 (689 SE2d 59) (2009).

Applying these principles here, we find that the Company was on constructive notice of what a reasonable inspection would have revealed about the curb. Thus, the Company is charged with notice of the curb's height in relation to the parking lot, the lighting conditions, the view of the curb for someone descending the stairs, and the absence of any paint or warning signs regarding the curb, especially as the evidence showed that other steps on the property had been painted. See *Hagadorn v. Prudential Ins. Co.*, 267 Ga. App. 143, 146 (598 SE2d 865) (2004); *Yasinsac v. Colonial Oil Properties*, 246 Ga. App. 484, 485 (541 SE2d 109) (2000). And the Perkinses have presented sufficient evidence, through their expert and otherwise, to raise a jury question as to whether these conditions presented a hazard. For purposes of summary judgment, therefore, the Company is charged with constructive knowledge that the curb presented a dangerous condition. *Cocklin*, 296 Ga. App. at 183; *Barton v. City of Rome*, 271 Ga. App. 858, 861 (610 SE2d 566) (2005).

The question then becomes whether Perkins had equal knowledge of the danger in light of the evidence showing that he may have descended the stairs and stepped off the curb two to three times before.[3] "However, it is the plaintiff's knowledge of the specific hazard precipitating a slip and fall which is determinative, not merely his knowledge of the generally prevailing hazardous conditions or of hazardous conditions which plaintiff observes and avoids." (Punctuation and footnote omitted.) *Barton*, 271 Ga. App. at 861. In this case, the Perkinses presented evidence that the step down from the curb was difficult to see when approached from above due to lighting conditions, darkened surfaces and lack of warning. Doris Perkins testified that you could negotiate the curb "only if you watched all the time." But "[l]ooking continuously, without intermission, for defects . . . is not required in all circumstances. What is a reasonable lookout depends upon all the circumstances at the time and place." (Citation and punctuation omitted.) *Newell v. Great Atlantic &c. Co.*, 222 Ga. App. 884, 885 (1) (476 SE2d 631) (1996). "[A]n invitee is not required, as a matter of law, to look continuously . . . for defects . . . since the invitee is entitled to assume that the owner/occupier has exercised reasonable care to make the premises safe for the invitee and continues to exercise such care while the

---

[3] The Perkinses had resided at the Comfort Inn for two to three days, and Doris Perkins deposed that they had gone up and down the stairs at least once per day.

YALE LAW LIBRARY

invitee remains on the premises." (Citation and punctuation omitted.) *Stephens v. Kroger Co.*, 236 Ga. App. 871, 873 (2) (513 SE2d 22) (1999).

Viewed in the light most favorable to the Perkinses as nonmovants on summary judgment, we find that the evidence of record "creates a material issue of fact as to whether the specific hazard allegedly precipitating [Perkins'] fall was readily observable to [him] in the exercise of ordinary care and whether [he] can therefore be presumed to have knowledge of it." (Footnote omitted.) *Cocklin*, 296 Ga. App. at 182. See also *Rutherford*, 301 Ga. App. at 704-705; *Newell*, 222 Ga. App. at 885 (1); *Whitley v. Hulon*, 194 Ga. App. 363, 364 (390 SE2d 598) (1990). Compare *Pirkle v. Robson Crossing*, 272 Ga. App. 259, 261 (612 SE2d 83) (2005) (summary judgment appropriate where no evidence that steep curb was anything but open and obvious and fall occurred because plaintiff simply failed to appreciate curb's height); *Echols v. Whisker's Food & Spirits*, 229 Ga. App. 240, 241 (493 SE2d 722) (1997) (physical precedent only). As our Supreme Court recently affirmed,

> issues such as how closely a particular retailer should monitor its premises and approaches, what retailers should know about the property's condition at any given time, how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that, in general, must be answered by juries as a matter of fact rather than by judges as a matter of law.

*American Multi-Cinema v. Brown*, 285 Ga. at 445 (2). Accordingly, we reverse the trial court's grant of summary judgment.

*Judgment reversed. Smith, P. J., and Mikell, J., concur.*

DECIDED JULY 9, 2010.

*William M. Akin*, for appellants.
*Buckley King, Robert P. White, Eulryoung Chung*, for appellee.