**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **http://www.gaappeals.us/rules/**

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A1884. NORWICH et al. v. THE SHRIMP FACTORY, INC.

BRANCH, Judge.

Franceska and Leonard Norwich brought this premises liability action against the Shrimp Factory, Inc., a Savannah restaurant, after Mrs. Norwich fell from a platform upon exiting a toilet stall in the women's restroom. The trial court granted summary judgment to the Shrimp Factory on the ground that the uncontroverted evidence showed that Mrs. Norwich had equal knowledge of the allegedly hazardous condition of the platform because she had previously negotiated the platform when she entered the toilet stall. On appeal, plaintiffs argue that a genuine issue of material fact remains as to whether Mrs. Norwich had equal knowledge of the hazard posed by the platform. We disagree and therefore affirm.

"On summary judgment, a trial court is not authorized to resolve disputed issues of material fact." (Citation omitted.) *Ly v. Jimmy Carter Commons, LLC*, 286 Ga. 831, 833 (1) (691 SE2d 852) (2010). Summary judgment is proper if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation omitted.) *Gayle v. Frank Callen Boys & Girls Club*, 322 Ga. App. 412 (745 SE2d 695) (2013).

So viewed, the evidence shows that the women's restroom at Shrimp Factory includes two toilet stalls constructed on top of a raised platform at the far end of the restroom. To reach either of these stalls, a patron must walk across the main floor of the restroom, step up onto the platform, and then step up into the stall. The platform is 6 inches higher than the main floor, and the stall floors are 6½ inches higher than the platform. The platform has the same wood flooring as the main floor, but the stall floors are made of tile.

Each stall has a door that opens outward. The step from the platform to the stall floor is located at the stall door. On the inside and outside of each stall door is a sign

2

that says "Watch Your Step." There is a yellow stripe on the floor across the threshold of the entrance to the stalls, demarcating the step from the platform to the stall floor. The platform has two non-skid black strips on the surface in front of each bathroom stall, one of which is nearly flush with the edge of the step. A handrail extends from a wall between the two bathroom stalls to the end of the platform, to which the handrail is attached.

On the day of the accident, a hostess seated Mrs. Norwich and her husband in the restaurant, and Mrs. Norwich then went to the women's restroom. After she entered the restroom, Mrs. Norwich stepped up onto the platform and then stepped up into one of the bathroom stalls. While in the stall, she saw the sign on the inside of the door warning patrons to watch their step. She also noticed the yellow stripe on the floor marking the threshold of the bathroom stall. As she exited from the stall, Mrs. Norwich stepped down onto the platform while holding the handrail. Believing that she was on the main floor of the restroom, Mrs. Norwich took her hand off the handrail when she came to the end of it, and she looked and stepped towards the sink. She then fell onto her right foot, dislocating and fracturing her ankle.

Mrs. Norwich and her husband brought this action against the Shrimp Factory, contending that the women's restroom was negligently designed and constructed and

that the Shrimp Factory had failed to take appropriate measures to make the restroom safe. The Shrimp Factory answered, denying liability, and thereafter moved for summary judgment on the ground that as a matter of law, Mrs. Norwich had equal knowledge of any alleged hazardous condition in the restroom. In opposing summary judgment, Mrs. Norwich and her husband cited her deposition testimony and the affidavits of two experts. The first expert, an engineer, averred that several building code violations in the construction of the women's restroom "contributed to" Mrs. Norwich's fall. Mrs. Norwich and her husband also submitted the affidavit of a professor of psychology, who testified that the absence of physical features at the edge of the platform created an "apparent continuity" of the floor and platform surfaces amounting to a failure in the design of the women's bathroom and the cause of Mrs. Norwich's fall.

The trial court granted the Shrimp Factory's motion for summary judgment on the ground that Mrs. Norwich had equal knowledge of the hazard gained when she successfully negotiated the step up from the main floor to the platform on her way into the bathroom stall. This appeal followed.

A premises liability plaintiff "must plead and prove that: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite

4

exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control." (Citation and punctuation omitted.) *Perkins v. Val D'Aosta Co.*, 305 Ga. App. 126, 128 (699 SE2d 380) (2010); see also *American Multi-Cinema v. Brown*, 285 Ga. 442, 444 (2) (679 SE2d 25) (2009).

In cases involving allegations of a static, dangerous condition such as the step at issue here, an invitee's actual knowledge of the condition relieves a proprietor of any duty to warn that invitee of that condition or hazard because "the invitee has as much knowledge as the proprietor does." *Perkins*, 305 Ga. App. at 128. Thus "a claim involving a static defect differs from other slip and fall cases in that *when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have equal knowledge of it and cannot recover for a subsequent injury resulting therefrom.*" Id. (Citations and punctuation omitted; emphasis supplied); see also *Cocklin v. v. J. C. Penney Corp.*, 296 Ga. App. 179, 181-182 (674 SE2d 48) (2009); *Trans-Vaughn Dev. Corp. v. Cummings*, 273 Ga. App. 505, 508 (615 SE2d 579) (2005); *Newell v. Great Atlantic & Pacific Tea Co.*, 222 Ga. App. 884, 885 (476 SE2d 631) (1996). This rule imputing knowledge to an invitee of the danger posed by a premises feature is limited, however, "to cases involving a

static condition that is *readily discernable* to a person exercising reasonable care for his own safety." (Citation and punctuation omitted; emphasis in original.) *Strauss v. City of Lilburn*, 329 Ga. App. 361, 364 (1) (765 SE2d 49) (2014); see also *Perkins*, 305 Ga. App. at 128-129; *Rutherford v. Revco Discount Drug Centers*, 301 Ga. App. 702, 704 (689 SE2d 59) (2009); *Cocklin*, 296 Ga. App. at 180; *Newell*, 222 Ga. App. at 885. This limitation of the rule imputing knowledge of a hazard is simply a restatement of the truism, still applied, that a plaintiff is held to have knowledge of "an open *and obvious* condition." See *Wright v. K-Mart Corp.*, 286 Ga. App. 765 (650 SE2d 300) (2007) (no error in granting a store summary judgment as to plaintiff's claim arising from a trip over store's shelf corner) (emphasis supplied); *Music v. Steamco, Inc.*, 265 Ga. App. 185, 186 (593 SE2d 370) (2004) (plaintiff was held to have had equal knowledge of water on steps leading from restaurant); *Becton v. Tire King of North Columbus*, 246 Ga. App. 57, 59 (539 SE2d 551) (2000) (plaintiff was held not to have exercised due care when she walked backward into a planter that was "an open and obvious condition").

The appeal before us thus turns on the question whether, shortly after Mrs. Norwich had ascended the step marked by black non-skid tape from the main floor to the platform without incident, any hazard posed by the same step downward from

6

the platform to the main floor was "obvious" or "readily discernable" to her as a matter of law.

When a case involves a second approach to a static hazard soon after successful traversal of the same hazard, we have consistently resolved the matter of equal knowledge as a matter of law. In *Gantt v. Dave & Busters of Ga.*, 271 Ga. App. 457 (610 SE2d 116) (2005), for example, we held that a plaintiff who had previously stepped up to a platform to play a video game had acquired equal knowledge of the hazard posed by the step even when "a white border across the vertical portion of the top level" was visible "only from the bottom level," and when "the top level was marked with a brown strip along its edge," just as the top level of this step was marked with a black strip along its wooden edge. Id. at 458. Likewise, in *Orff v. Stonewood Restaurant Group*, 285 Ga. App. 488 (646 SE2d 702) (2007), a plaintiff who had previously traversed a step up from a restaurant floor to an elevated booth "fell on the same step she used to reach her booth." Id. at 490. We emphasized that "it is the plaintiff's knowledge of the *specific* hazard which caused the fall that determines whether the plaintiff can prevail on a premises liability claim," and concluded that having looked down to step up into the booth, the plaintiff should have known that she would have to step down such that she had equal knowledge of

7

the hazard posed by the step. Id. (citation and punctuation omitted; emphasis in original).

Here, Mrs. Norwich twice noted "Watch Your Step" signs on both the inside and the outside of the bathroom stall before falling off the platform shortly after ascending it. Two black non-skid strips marked the platform between the stall and the main floor, with one placed near the edge of the platform; both strips are "readily discernable" even in the poor-quality copy of a photograph included in this appellate record. Norwich's experts testified that the irregular depth of this step, the lack of a proper handrail, and the use of the same wood in the platform and the main floor all contributed to her fall. Norwich herself testified, however, that nothing had changed in the condition of the steps between her ascent and her attempted descent, and that she looked to her left in the direction of the bathroom sinks, let go of the handrail, and stepped into the air, at which moment she fell. In light of this positive evidence from the only person present at the time of the fall as to the conditions under which it took place, expert opinion as to how Norwich may have perceived the step is both speculative and irrelevant. See *Pennington v. WJL, Inc.*, 263 Ga. App. 758, 760 (1), (2) (589 SE2d 259) (2003) (affirming grant of summary judgment when evidence did

8

not show that plaintiff actually tripped over hoses near doorway; circumstantial evidence as to the cause of his fall was speculative and properly disregarded).

When, as here, a plaintiff has successfully negotiated a specific and static condition only moments before encountering it again, our law reasonably imputes knowledge of that condition to her because it presents no new hazard. The cases cited by the dissent are thus inapposite, and its reliance on expert testimony about an "apparent continuity" appearing from one angle but not another would gut the longstanding rule that the successful negotiation of an obvious, static, and specific hazard, including a step up, bars recovery for injuries sustained in a fall on the way back down the same hazard. Although there was some evidence in *Perkins*, for example, that the plaintiff had previously negotiated the curb over which he fell, his descent off the curb took place some hours after his previous ascent, with the result that he was traversing a hazard rendered substantially different by either changed conditions, the passage of time, or both. Id. at 126-127; see also *Cocklin*, 296 Ga. App. at 180 (plaintiff falls on entry to salon she had visited "four or five times before," with the elapsed time between the previous visits and the fall not specified). As we emphasized in *Strauss*, moreover, and although the plaintiff in that case had previously visited a restaurant, she had never entered from the point she did on the

9

day of her fall, and thus had not "actually walked either up or down the single-step riser [on which she fell] before [that] fall." 329 Ga. App. at 364. Likewise, there was no evidence in *Rutherford* that the plaintiff entered the store by walking up the same ramp down which she exited: as we noted, "the fact that Rutherford had walked into the store once [did] not as a matter of law give her actual or constructive knowledge of the hazard she faced walking out of the store directly onto the steep ramp." Id. at 703. Our decision in *Hatcher v. City of Albany*, 147 Ga. App. 843 (250 SE2d 537) (1978), which reversed a grant of a directed verdict as to a claim arising from a fall from a set of exterior steps, issued almost ten years before the static defect rule and its limitation as stated above, which first appeared in 1996 and 1995 respectively. See *MARTA v. Fife*, 220 Ga. App. 298, 300 (2) (469 SE2d 420) (1996); *Martin v. Dunwoody-Shallowford Partners*, 217 Ga. App. 559, 561 (458 SE2d 388) (1995). The two remaining cases cited by the dissent are not binding precedent. See *Pinder v. H & H Food Svcs.*, 326 Ga. App. 493 (756 SE2d 721) (2014) (physical precedent only); *Murray v. West Building Materials of Ga.*, 243 Ga. App. 834 (534 SE2d 204) (2000) (physical precedent only).

We understand that an invitee like Mrs. Norwich "[is not] required, in all circumstances, to look continuously at the floor, without intermission, for defects."

*American Multi-Cinema v. Brown*, 285 Ga. 442, 447 (2) (679 SE2d 25) (2009) (footnote omitted). But "the ultimate issue" in this case is whether the owner of this property "was negligent in maintaining a hazardous condition on the property," which fault cannot arise from a failure to warn an invitee of "the obvious." *McLemore v. Genuine Parts Co.*, 313 Ga. App. 641, 644 (722 SE2d 366) (2012) (citation and punctuation omitted). After all, as we repeated a short time ago, "in everyday life, persons are required to negotiate floors, steps, and doorways." Id. This trial court did not err when it concluded that Mrs. Norwich had equal knowledge of the allegedly hazardous step she had successfully traversed shortly before her fall. We therefore affirm the grant of summary judgment to The Shrimp Factory.

*Judgment affirmed. Doyle, P. J., Miller, Dillard, and Boggs, JJ., concur. Barnes, P. J., and Ellington, P. J., dissent.*

A14A1884. NORWICH et al. v. THE SHRIMP FACTORY, INC.

BARNES, Presiding Judge, dissenting.

A genuine issue of material fact exists as to whether the hazardous condition of the bathroom platform was readily discernible to Mrs. Norwich, in the exercise of ordinary care, from her vantage point at the time of her fall. Consequently, whether Mrs. Norwich exercised ordinary care for her own safety, and thus whether she had equal knowledge of the hazard posed by the platform, are questions of fact that should be resolved by a jury. The trial court's grant of summary judgment to the Shrimp Factory thus should be reversed, and because the majority concludes otherwise, I respectfully dissent.

Construed in favor of Mrs. Norwich as the nonmoving party, the evidence shows that the floor in the women's restroom at the Shrimp Factory has three levels: a main wooden floor, a raised wooden platform that is 22 ½ inches in length, and two bathroom stalls with tile floors. The step from the platform to the bathroom stall floor

12

is located immediately at the stall doors, which have "Watch Your Step" signs on them. While there is a yellow stripe on the floor at the entrance to the stalls that marks where the stall floor drops off to the platform, there is no corresponding stripe marking the edge of the platform where it drops off to the main floor. The platform has two non-skid black strips in front of each bathroom stall, but the strips clearly do not reach the edge of the platform and do not demarcate where it drops off to the main floor. A handrail extends from a wall between the two bathroom stalls, but it stops at the end of the platform.

When Mrs. Norwich exited one of the bathroom stalls, she stepped down onto the platform as she held the handrail. Because she thought she was on the main floor, Mrs. Norwich injured her right foot as she unexpectedly dropped from the platform to the main floor upon stepping towards a bathroom sink to wash her hands.

One of Mrs. Norwich's experts, a professional engineer, opined that there were multiple building code violations in the construction of the women's restroom that contributed to Mrs. Norwich's accident. According to the expert, the fact that the platform was less than 44 inches in length made it difficult for patrons like Mrs. Norwich walking out of a bathroom stall to "appreciate the fact that they are on a [platform] and the fact that there is another step to negotiate" downward. Moreover,

the expert opined, the lack of a proper handrail extension to the main floor contributed to patrons like Mrs. Norwich failing "to apprehend the fact that the floor was one step down from the platform." The expert further opined that the uniform color and wooden texture of the platform and main floor affected the visibility of the step from the platform to the main floor, and that the placement of the yellow strip where the bathroom stall dropped off to the platform would cause patrons to reasonably expect a similar strip where the platform dropped off to the main floor.

Mrs. Norwich's second expert, a professor of psychology who specialized in the study of human perception and performance, opined that:

> In the specific case of [Mrs.] Norwich's accident, there were no physical features at the edge of the platform in the area in which she fell that would have served as a visual cue for the presence of the second step that she encountered that would have attracted her attention to it. That is, the edge of the platform was not demarcated by means of paint or other markings that would have allowed it to be visually discriminated from the base floor below the step. The color and texture of the platform that Mrs. Norwich was standing on at that point was identical to the color and texture of the area below it, so that visually there was an apparent continuity of surfaces. Insofar as the riser connecting the platforms was not visible from the direction that Mrs. Norwich approached it, the rise also could not serve as a visual cue for the discontinuity in the surface. Additionally, the end of the handrail at the edge of the platform provided a misleading cue to Mrs. Norwich that she

14

had reached the base level of the floor. . . . [Furthermore,] [t]he bright yellow paint demarcating the edge of the first step and an accompanying warning sign would have created an expectation that edges in this environment would have some form of demarcation.

Given the lack of demarcation at the edge of the platform where it dropped off to the main floor, combined with the allegedly misleading cues provided by the length of the handrail and presence of a demarcation only at the edge of the bathroom stall, the expert concluded that the failure in the design of the women's bathroom was the direct and proximate cause of Mrs. Norwich's accident.

After considering the submissions of the parties, the trial court granted the Shrimp Factory's motion for summary judgment, and the majority now affirms based on the rule that a person who has successfully negotiated a hazardous condition before is presumed to have equal knowledge of it and cannot recovery for any injuries resulting from the hazard. See *Perkins v. Val D'Aosta Co.*, 305 Ga. App. 126, 128 (699 SE2d 380) (2010). But "the rule imputing knowledge of a danger to a person who has successfully negotiated an alleged dangerous condition before applies only to cases involving a static condition that is *readily discernible* to a person exercising reasonable care for his own safety." (Citation and punctuation omitted; emphasis in

15

original.) *Strauss v. City of Lilburn*, 329 Ga. App. 361, 364 (1) (765 SE2d 49) (2014). See *Perkins*, 305 Ga. App. at 128-129.

Given the "readily discernible" requirement, even if the plaintiff previously negotiated a step or ramp, a question of fact still remains as to whether the plaintiff should have detected the change in elevation at the step or on the ramp at the time of his or her fall, if there is evidence that the change in elevation, from the plaintiff's vantage point when the fall occurred, was hidden or difficult to see because of irregularities or unique characteristics of the step or ramp. See *Perkins*, 305 Ga. App. at 129 (genuine issue of material fact existed as to whether the plaintiff had equal knowledge of hazard posed by curb, even though the plaintiff had stepped down from the curb two or three times before, given that the step down from the curb "was difficult to see when approached from above due to lighting conditions, darkened surfaces and lack of warning"); *Rutherford v. Revco Discount Drug Centers*, 301 Ga. App. 702, 704 (689 SE2d 59) (2009) (genuine issue of material fact existed as to whether the plaintiff had equal knowledge of hazard posed by ramp he had previously ascended a few minutes before when entering store, given that "the ramp was not painted or marked in any way to make it stand out from the sidewalk," "the ramp declined almost at the threshold of the door" to the store, and the closed door blocked

16

the plaintiff's view of the ramp);[1] *Murray v. West Bldg. Materials of Ga.*, 243 Ga. App. 834, 835-836 (534 SE2d 204) (2000) (physical precedent only) (fact that plaintiff had previously negotiated steps upon entering store did not warrant grant of summary judgment to defendant who fell when exiting from the store, given the hazards posed by descending the steps caused by "a combination of the steps' lack of uniformity, their excessive combined height and width, and the too-short handrail compounding the first two irregularities"); *Hatcher v. City of Albany*, 147 Ga. App. 843, 845 (2) (250 SE2d 537) (1978) (summary judgment inappropriate where plaintiff fell while walking down steps that were irregular in depth and were concealed by the dark, although he had previously ascended and descended the steps shortly before the fall occurred).[2]

---

[1] The majority claims that "there was no evidence in *Rutherford* that the plaintiff entered the store by walking up the same ramp down which she exited." But we pointed out in *Rutherford*, 301 Ga. App. at 704, that the store "had a single entry" with a ramp and "[n]o landing outside the door." Moreover, the dissent in *Rutherford* emphasized that there was "no evidence . . . that [the plaintiff] gained entrance to the store except by means of the same ramp she fell down on exiting" and that it was "undisputed" that she had "negotiated the ramp successfully on entering the store." Id. at 706 (Andrews, P. J., dissenting).

[2] Although the majority states that *Hatcher* was "issued almost ten years before the static defect rule and its limitation," *Hatcher* is consistent with our more recent static defect cases and remains good law, as made clear by our recent citation to the case with approval in *Rutherford*, 301 Ga. App. at 703-704.

Likewise, if the change in elevation is hidden or difficult to see from the plaintiff's vantage point because of an optical illusion, summary judgment is inappropriate even if the plaintiff has previously negotiated the step or ramp. See *Strauss*, 329 Ga. App. at 362, 364-365 (1) (even if plaintiff had previously negotiated step, summary judgment would be inappropriate, where change in elevation at step, "especially when viewed in descent," was "'invisible' on sunny days" such that the step "appear[ed] 'continuous' or like 'one flat surface' when walking down towards the street"); *Pinder v. H & H Food Svcs.,* 326 Ga. App. 493, 503 (3), n. 9 (756 SE2d 721) (2014) (physical precedent only) (noting that even if plaintiff had previously walked up the ramp, summary judgment was inappropriate where plaintiff could not see change in elevation when descending the ramp because of an optical illusion).

When these principles are applied to the present case, although Mrs. Norwich had previously stepped onto the platform when walking to the bathroom stall, there is a genuine issue of material fact as to whether the change in elevation from the platform to the main floor should have been readily discernible to her, in the exercise of reasonable care, when walking away from the stall. Mrs. Norwich presented evidence, including expert testimony, from which a jury could find that the drop from the platform to the main floor, from the vantage point of a patron walking away from

18

the bathroom stall, was extremely difficult to see in light of the fact that the platform and main floor were the same color wood, and there were no lines or marks demarcating the edge of the platform. Additionally, a jury could find that the short length of the platform and the failure of the handrail to extend down to the main floor, when combined with the previously mentioned irregularities, created an illusion to a patron standing on the platform that he or she was standing on the main floor. A jury could further find that the bright yellow line demarcating the edge of the bathroom stall and accompanying warning sign could have led a patron to reasonably believe that other drop-offs in this environment would have some form of demarcation, and that the absence of such a demarcation at the edge of the platform thus was misleading.

Under these circumstances, whether Mrs. Norwich exercised ordinary care for her own safety, and thus whether she had equal knowledge of the hazard posed by the platform, are questions of fact to be resolved at trial. See *Strauss*, 329 Ga. App. at 362, 364-365 (1) (material issues of fact remained as to whether hazard was readily discernible to plaintiff, where, among other things, plaintiff's expert testified to "camouflaged hazard" posed by step where plaintiff fell); *Cocklin v. JC Penney Corp.*, 296 Ga. App. 179, 182 (674 SE2d 48) (2009) (material issues of fact remained

19

as to whether hazard was readily discernible to plaintiff, where, among other things, plaintiff's flooring expert testified to difficulty in observing edge of ceramic tile where plaintiff fell).

In affirming the trial court's grant of summary judgment to the Shrimp Factory, the majority relies upon *Orff v. Stonewood Rest. Group*, 285 Ga. App. 488, 489-490 (646 SE2d 702) (2007), but that case is distinguishable. In *Orff*, the plaintiff walked up a step to reach a booth in a restaurant and later fell from the step when leaving the restaurant. Id. at 488-489. We affirmed the grant of summary judgment to the restaurant on the ground that the plaintiff had previously negotiated the hazardous condition posed by the step without incident and thus was presumed to have knowledge of the condition. Id. at 489-490. However, *Orff* involved a single step up to a booth, whereas the present case involved two steps, one of which had a sharply contrasting demarcation, which could have misled a patron standing on the platform looking away from the bathroom stall into believing that he or she was standing on the main floor, as indicated by the expert testimony presented.

Additionally, the plaintiff in *Orff* admitted that if she had been paying attention she would not have fallen, conceding that she had been looking over at her dinner companions when she fell and that "if she had looked down, she likely would have

20

seen the step as there was nothing obstructing her view and she knew she had to descend a step to reach the hostess stand." 285 Ga. App. at 489. In contrast, Mrs. Norwich testified in her deposition that she was not distracted before she fell from the platform and instead had fallen simply because she had thought she was on the main floor. According to Mrs. Norwich, she had been holding onto the handrail upon exiting the bathroom stall and had come to the end of the rail when she looked over at the sinks and stepped towards them, believing she was on the main floor. And when asked if she would have seen the step from the platform to the main floor if she had looked down at the ground immediately before her fall, Mrs. Norwich testified that she was not sure that she would have, given that the platform and main floor were the same color. Given these differences between the two cases as reflected by Mrs. Norwich's deposition testimony, the majority's reliance on *Orff* is misplaced. See *Strauss*, 329 Ga. App. at 364 (1) (distinguishing *Orff* on the ground that the plaintiff had previously traversed the same hazard *and* had "admitted that she was not paying attention at the time of the fall").

The majority also relies upon *Gantt v. Dave & Buster's of Ga.*, 271 Ga. App. 457 (610 SE2d 116) (2005), which involved a single step that "was marked with a brown strip along its edge." Because the step from which the plaintiff fell had a strip

21

on its edge that demarcated the drop off from the step to the main floor, *Gantt* is distinguishable from the instant case. Here, the non-skid black strips on the platform from which Mrs. Norwich fell did not extend to the edge of the platform, and, as previously discussed, a jury could find that this lack of demarcation along the edge contributed to the difficulty in seeing the drop from the platform to the main floor when walking away from the bathroom stall.

For these combined reasons, we should reverse the trial court's grant of summary judgment to the Shrimp Factory so that the factual issues arising in this case can be decided by a jury. As our Supreme Court has emphasized, "the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication." *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (2) (b) (493 SE2d 403) (1997). Summary judgment is proper "only when the evidence is plain, palpable, and undisputed," and that simply is not the situation here. Id.

I am authorized to state that Presiding Judge Ellington joins in this dissent.