*165 BARNES, Presiding Judge,
dissenting.
A genuine issue of material fact exists as to whether the hazardous condition of the bathroom platform was readily discernible to Mrs. Norwich, in the exercise of ordinary care, from her vantage point at the time of her fall. Consequently, whether Mrs. Norwich exercised ordinary care for her own safety, and thus whether she had equal knowledge of the hazard posed by the platform, are questions of fact that should be resolved by a jury. The trial court’s grant of summary judgment to the Shrimp Factory thus should be reversed, and because the majority concludes otherwise, I respectfully dissent.
Construed in favor of Mrs. Norwich as the nonmoving party, the evidence shows that the floor in the women’s restroom at the Shrimp Factory has three levels: a main wooden floor, a raised wooden platform that is 22V2 inches in length, and two bathroom stalls with tile floors. The step from the platform to the bathroom stall floor is located immediately at the stall doors, which have “Watch Your Step” signs on them. While there is a yellow stripe on the floor at the entrance to the stalls that marks where the stall floor drops off to the platform, there is no corresponding stripe marking the edge of the platform where it drops off to the main floor. The platform has two nonskid black strips in front of each bathroom stall, but the strips clearly do not reach the edge of the platform and do not demarcate where it drops off to the main floor. A handrail extends from a wall between the two bathroom stalls, but it stops at the end of the platform.
When Mrs. Norwich exited one of the bathroom stalls, she stepped down onto the platform as she held the handrail. Because she thought she was on the main floor, Mrs. Norwich injured her right foot as she unexpectedly dropped from the platform to the main floor upon stepping toward a bathroom sink to wash her hands.
One of Mrs. Norwich’s experts, a professional engineer, opined that there were multiple building code violations in the construction of the women’s restroom that contributed to Mrs. Norwich’s accident. According to the expert, the fact that the platform was less than 44 inches in length made it difficult for patrons like Mrs. Norwich walking out of a bathroom stall to “appreciate the fact that they are on a [platform] and the fact that there is another step to negotiate” downward. Moreover, the expert opined, the lack of a proper handrail extension to the main floor contributed to patrons like Mrs. Norwich failing “to apprehend the fact that the floor was one step down from the platform.” The expert further opined that the uniform color and wooden texture of the platform and main floor affected the visibility of the step from the platform to the main floor, and that the placement of the yellow strip where the bathroom stall dropped off to the *166 platform would cause patrons to reasonably expect a similar strip where the platform dropped off to the main floor.
Mrs. Norwich’s second expert, a professor of psychology who specialized in the study of human perception and performance, opined:
In the specific case of [Mrs.] Norwich’s accident, there were no physical features at the edge of the platform in the area in which she fell that would have served as a visual cue for the presence of the second step that she encountered that would have attracted her attention to it. That is, the edge of the platform was not demarcated by means of paint or other markings that would have allowed it to be visually discriminated from the base floor below the step. The color and texture of the platform that Mrs. Norwich was standing on at that point was identical to the color and texture of the area below it, so that visually there was an apparent continuity of surfaces. Insofar as the riser connecting the platforms was not visible from the direction that Mrs. Norwich approached it, the rise also could not serve as a visual cue for the discontinuity in the surface. Additionally, the end of the handrail at the edge of the platform provided a misleading cue to Mrs. Norwich that she had reached the base level of the floor----[Furthermore,] [t]he bright yellow paint demarcating the edge of the first step and an accompanying warning sign would have created an expectation that edges in this environment would have some form of demarcation.
Given the lack of demarcation at the edge of the platform where it dropped off to the main floor, combined with the allegedly misleading cues provided by the length of the handrail and presence of a demarcation only at the edge of the bathroom stall, the expert concluded that the failure in the design of the women’s bathroom was the direct and proximate cause of Mrs. Norwich’s accident.
After considering the submissions of the parties, the trial court granted the Shrimp Factory’s motion for summary judgment, and the majority now affirms based on the rule that a person who has successfully negotiated a hazardous condition before is presumed to have equal knowledge of it and cannot recover for any injuries resulting from the hazard. See Perkins v. Val D'Aosta Co., 305 Ga. App. 126, 128 (699 SE2d 380) (2010). But “the rule imputing knowledge of a danger to a person who has successfully negotiated an alleged dangerous condition before applies only to cases involving a static condition that is readily discernible to a person exercising *167 reasonable care for his own safety.” (Citation and punctuation omitted; emphasis in original.) Strauss v. City of Lilburn, 329 Ga. App. 361, 364 (765 SE2d 49) (2014). See Perkins, 305 Ga. App. at 128-129.
Given the “readily discernible” requirement, even if the plaintiff previously negotiated a step or ramp, a question of fact still remains as to whether the plaintiff should have detected the change in elevation at the step or on the ramp at the time of his or her fall, if there is evidence that the change in elevation, from the plaintiff’s vantage point when the fall occurred, was hidden or difficult to see because of irregularities or unique characteristics of the step or ramp. See Perkins, 305 Ga. App. at 129 (genuine issue of material fact existed as to whether the plaintiff had equal knowledge of hazard posed by curb, even though the plaintiff had stepped down from the curb two or three times before, given that the step down from the curb “was difficult to see when approached from above due to lighting conditions, darkened surfaces and lack of warning”); Rutherford v. Revco Discount Drug Centers, 301 Ga. App. 702, 704 (689 SE2d 59) (2009) (genuine issue of material fact existed as to whether the plaintiff had equal knowledge of hazard posed by ramp he had previously ascended a few minutes before when entering store, given that “the ramp was not painted or marked in any way to make it stand out from the sidewalk,” “the ramp declined almost at the threshold of the door” to the store, and the closed door blocked the plaintiff’s view of the ramp);[1] Murray v. West Bldg. Materials of Ga., 243 Ga. App. 834, 835-836 (534 SE2d 204) (2000) (physical precedent only) (fact that plaintiff had previously negotiated steps upon entering store did not warrant grant of summary judgment to defendant who fell when exiting from the store, given the hazards posed by descending the steps caused by “a combination of the steps’ lack of uniformity, their excessive combined height and width, and the too-short handrail compounding the first two irregularities”); Hatcher v. City of Albany, 147 Ga. App. 843, 845 (2) (250 SE2d 537) (1978) (summary judgment inappropriate where plaintiff fell while walking down steps that were irregular in depth and were concealed by the dark, although he had *168 previously ascended and descended the steps shortly before the fall occurred).[2]
Likewise, if the change in elevation is hidden or difficult to see from the plaintiff’s vantage point because of an optical illusion, summary judgment is inappropriate even if the plaintiff has previously negotiated the step or ramp. See Strauss, 329 Ga. App. at 362, 364-365 (even if plaintiff had previously negotiated step, summary judgment would be inappropriate, where change in elevation at step, “especially when viewed in descent,” was “ ‘invisible’ on sunny days” such that the step “appeared] ‘continuous’ or like ‘one flat surface’ when walking down toward the street”); Pinder v. H & H Food Svcs., 326 Ga. App. 493, 503 (3), n. 9 (756 SE2d 721) (2014) (physical precedent only) (noting that even if plaintiff had previously walked up the ramp, summary judgment was inappropriate where plaintiff could not see change in elevation when descending the ramp because of an optical illusion).
When these principles are applied to the present case, although Mrs. Norwich had previously stepped onto the platform when walking to the bathroom stall, there is a genuine issue of material fact as to whether the change in elevation from the platform to the main floor should have been readily discernible to her, in the exercise of reasonable care, when walking away from the stall. Mrs. Norwich presented evidence, including expert testimony, from which a jury could find that the drop from the platform to the main floor, from the vantage point of a patron walking away from the bathroom stall, was extremely difficult to see in light of the fact that the platform and main floor were the same color wood, and there were no lines or marks demarcating the edge of the platform. Additionally, a jury could find that the short length of the platform and the failure of the handrail to extend down to the main floor, when combined with the previously mentioned irregularities, created an illusion to a patron standing on the platform that he or she was standing on the main floor. A jury could further find that the bright yellow line demarcating the edge of the bathroom stall and accompanying warning sign could have led a patron to reasonably believe that other drop-offs in this environment would have some form of demarcation, and that the absence of such a demarcation at the edge of the platform thus was misleading.
Under these circumstances, whether Mrs. Norwich exercised ordinary care for her own safety, and thus whether she had equal *169 knowledge of the hazard posed by the platform, are questions of fact to be resolved at trial. See Strauss, 329 Ga. App. at 362, 364-365 (material issues of fact remained as to whether hazard was readily discernible to plaintiff, where, among other things, plaintiff’s expert testified to “camouflaged hazard” posed by step where plaintiff fell); Cocklin v. JC Penney Corp., 296 Ga. App. 179, 182 (674 SE2d 48) (2009) (material issues of fact remained as to whether hazard was readily discernible to plaintiff, where, among other things, plaintiff’s flooring expert testified to difficulty in observing edge of ceramic tile where plaintiff fell).
In affirming the trial court’s grant of summary judgment to the Shrimp Factory, the majority relies upon Orff v. Stonewood Restaurant Group, 285 Ga. App. 488, 489-490 (646 SE2d 702) (2007), but that case is distinguishable. In Orff, the plaintiff walked up a step to reach a booth in a restaurant and later fell from the step when leaving the restaurant. Id. at 488-489. We affirmed the grant of summary judgment to the restaurant on the ground that the plaintiff had previously negotiated the hazardous condition posed by the step without incident and thus was presumed to have knowledge of the condition. Id. at 489-490. However, Orff involved a single step up to a booth, whereas the present case involved two steps, one of which had a sharply contrasting demarcation, which could have misled a patron standing on the platform looking away from the bathroom stall into believing that he or she was standing on the main floor, as indicated by the expert testimony presented.
Additionally, the plaintiff in Orff admitted that if she had been paying attention she would not have fallen, conceding that she had been looking over at her dinner companions when she fell and that “if she had looked down, she likely would have seen the step as there was nothing obstructing her view and she knew she had to descend a step to reach the hostess stand.” 285 Ga. App. at 489. In contrast, Mrs. Norwich testified in her deposition that she was not distracted before she fell from the platform and instead had fallen simply because she had thought she was on the main floor. According to Mrs. Norwich, she had been holding onto the handrail upon exiting the bathroom stall and had come to the end of the rail when she looked over at the sinks and stepped toward them, believing she was on the main floor. And when asked if she would have seen the step from the platform to the main floor if she had looked down at the ground immediately before her fall, Mrs. Norwich testified that she was not sure that she would have, given that the platform and main floor were the same color. Given these differences between the two cases as reflected by Mrs. Norwich’s deposition testimony, the majority’s reliance on Orff *170 is misplaced. See Strauss, 329 Ga. App. at 364 (distinguishing Orff on the ground that the plaintiff had previously traversed the same hazard and had “admitted that she was not paying attention at the time of the fall”).
Decided March 30, 2015
Reconsideration denied April 14, 2015
Duffy & Feemster, Dwight T. Feemster, for appellants.
Goodman McGuffey Lindsey & Johnson, Peter D. Muller, for appellee.
The majority also relies upon Gantt v. Dave & Buster’s of Ga., 271 Ga. App. 457 (610 SE2d 116) (2005), which involved a single step that “was marked with a brown strip along its edge.” Because the step from which the plaintiff fell had a strip on its edge that demarcated the drop off from the step to the main floor, Gantt is distinguishable from the instant case. Here, the nonskid black strips on the platform from which Mrs. Norwich fell did not extend to the edge of the platform, and, as previously discussed, a jury could find that this lack of demarcation along the edge contributed to the difficulty in seeing the drop from the platform to the main floor when walking away from the bathroom stall.
For these combined reasons, we should reverse the trial court’s grant of summary judgment to the Shrimp Factory so that the factual issues arising in this case can be decided by a jury. As our Supreme Court has emphasized, “the ‘routine’ issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff’s lack of ordinary care for personal safety are generally not susceptible of summary adjudication.” Robinson v. Kroger Co., 268 Ga. 735, 748 (2) (b) (493 SE2d 403) (1997). Summary judgment is proper “only when the evidence is plain, palpable, and undisputed,” and that simply is not the situation here. Id.
I am authorized to state that Presiding Judge Ellington joins in this dissent.

 The majority claims that “there was no evidence in Rutherford that the plaintiff entered the store by walking up the same ramp down which she exited.” But we pointed out in Rutherford, 301 Ga. App. at 704, that the store “had a single entry” with a ramp and “[n]o landing outside the door.” Moreover, the dissent in Rutherford emphasized that there was “no evidence... that [the plaintiff] gained entrance to the store except by means of the same ramp she fell down on exiting” and that it was “undisputed” that she had “negotiated [the] ramp successfully on entering the store.” Id. at 706 (Andrews, P. J., dissenting).

 Although the majority states that Hatcher was “issued almost ten years before the static defect rule and its limitation,” Hatcher is consistent with our more recent static defect cases and remains good law, as made clear by our recent citation to the case with approval in Rutherford, 301 Ga. App. at 703-704.